**Robert L. LEE, Appellee/Cross–Appellant,**

v.

**RAPID CITY AREA SCHOOL DISTRICT NO. 51–4, Appellant/Cross–Appellee.**

**Nos. 90–5499, 90–5500.**

United States Court of Appeals, Eighth Circuit.

Submitted July 21, 1992.

Decided Dec. 3, 1992.

Rapid City Area School District No. 51–4 on a claim that Lee was constructively discharged from his job as a teacher because of his age. *Lee v. Rapid City Area School District No. 51–4*, No. 90–5499 (8th Cir. Feb. 3, 1992). We reversed in part on the issue of liquidated damages, remanding to the district court. We granted rehearing en banc, vacated the panel opinion, and heard arguments. We now affirm the judgment in favor of Lee and again remand to the district court for entry of an award of liquidated damages consistent with our panel opinion.

After our panel opinion, the School District filed a petition for rehearing and a suggestion for rehearing en banc raising essentially three arguments: (1) Lee waived, abandoned, or became estopped from asserting his age discrimination claims by failing to pursue administrative review before the school board under South Dakota law; (2) the district court erred in excluding testimony of Principal Storm and Assistant Principal Voight about complaints they received concerning Lee's classroom performance during the 1986–87 school year; and (3) the district court misunderstood South Dakota's continuing contract law for public school teachers.

Thomas E. Simmons, Rapid City, SD, argued (Mark F. Marshall and Robert L. Lewis on the brief), for appellant.

Charles Rick Johnson, Gregory, SD, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, ROSS, Senior Circuit Judge, McMILLIAN, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM, LOKEN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges, En Banc.

JOHN R. GIBSON, Circuit Judge, with whom RICHARD S. ARNOLD, Chief Judge, ROSS, Senior Circuit Judge, McMILLIAN, FAGG, MAGILL, HANSEN and MORRIS SHEPPARD ARNOLD, Circuit Judges, join.

A panel of this court affirmed a judgment in favor of Robert L. Lee against the

We adopt the panel's recitation of facts, as well as part I of the panel's opinion, rejecting the School District's claim that it was entitled to judgment notwithstanding the verdict because Lee failed to pursue his administrative remedies and signed an agreement to retire. We further adopt parts III, IV, and V, holding that the district court did not err in instructing the jury; in refusing to grant a mistrial in response to arguments of counsel; or in denying the School District's motion for a new trial on the ground that the verdict was against the weight of the evidence. The panel opinion, which has not heretofore been published, is appended to this opinion.

Similarly, although we appreciate that the issue of liquidated damages is a difficult one, we adopt part VI of the

panel opinion and remand to the district court to award full liquidated damages, taking into consideration the School District's arguments for offset by the amounts of front pay awarded and the settlement payment. The panel properly held that the district court should consider such issues in the first instance.

In a supplemental brief on rehearing, the School District made additional arguments based on the state law issue, which we find it unnecessary to discuss.

■ The troublesome issue before us is the exclusion of testimony by Principal Storm and Assistant Principal Voight about the substance of complaints they had received from students and parents about Lee. The court admitted evidence that the administrators had received such complaints, but refused to allow testimony about the substance of the complaints unless they had been documented. Of course, we review the district court's ruling only for abuse of discretion. *Maddox v. Patterson*, 905 F.2d 1178, 1179 (8th Cir.1990).

Storm testified in general terms that he had received complaints from parents and students about Lee:

Q: Did you have some complaints from parents and students about Mr. Lee?

A: Correct.

The court later sustained an objection to the question: "Did you hear reports of how Mr. Lee was perceived?" but Storm was permitted to say: "The overall tone of some students was negative." The School District made no offer of proof at the time of this testimony. Later, the School District's counsel asked Storm:

Q. Had you had both students and parents express the concern [that Mr. Lee lacks a real concern for his students]?

There was a hearsay objection and the court inquired:

The Court: Did you reduce any of those objections to writing?

A. Mrs. Wood put hers in writing to us, I believe.

The Court: She is the only one?

A. At this time that I have, yes, correct.

The Court: Well let me ask this question: you say parents and teachers—or parents and students. You mean some; you don't mean all of them?

A. No.

Thus, the court itself summarized Storm's testimony before the jury as saying that some parents and students had expressed concern about Lee. After some further discussion, counsel for the School District withdrew the question.

Storm was allowed to describe Mrs. Wood's complaint, which was reduced to writing. She came to see Storm after seeing Lee, and stated that Lee was rude and abrupt. She was very upset about it. Storm attempted to contact Lee, but could not because Lee had left fifteen minutes earlier than he was supposed to leave that day.

The School District made its offer of proof at a recess:

[W]e do offer to prove through Mr. Storm, if permitted to do so by the Court, that he received innumerable complaints from, first of all, parents at the beginning of the school year asking that their children not be placed in Mr. Lee's class because of his reputation which was rampant throughout the community that attended West Junior High School. He would also receive complaints from both students and parents concerning Mr. Lee's teaching of various sorts, which he can relate in detail....

The court denied the offer of proof, stating:

Now, I could not trust the witness after hearing him for several hours; I could not trust him to recount generally that he had certain objections and based on that he did so and so or he heard so and so....

Your question[s] may have been innocent, but your answers that you were getting from that witness were not innocent. It was like opening a flood gate, and I am not going to let that happen.... He was coming to conclusions, and I could not stop him throughout the course of his testimony. It was difficult

to stop him. For that reason, I am not going to let it in.

The district judge also ruled that the offered testimony was hearsay that did not come within any of the exceptions. The district court pointed to the School District's Negotiated Agreement with its teachers, which required the district to reduce to writing any complaints about teachers that would be used in evaluating the teacher.[1]

We first turn to the offer of proof, as error may not be predicated upon a ruling excluding evidence unless a substantial right of the party is affected and "the substance of the evidence was made known to the court by offer" or was apparent from the context of the questions. Fed. R.Evid. 103(a)(2); *Strong v. Mercantile Trust Co.*, 816 F.2d 429, 431 (8th Cir.1987), *cert. denied*, 484 U.S. 1030, 108 S.Ct. 759, 98 L.Ed.2d 771 (1988). On several occasions the court had expressed concern with the generality of the testimony and the impossibility of cross-examination, yet the offer made no effort to satisfy these concerns. The offer referred only generally to complaints without naming the individuals making the complaints or the specific substance of the complaints they made. *Strong* emphasized "the importance of expressing precisely the substance of the excluded evidence" in an offer of proof. *Id.* at 432. The offer simply does not identify specific testimony that the court erred in excluding.

With respect to the substance of the testimony covered in the offer of proof, the offer stated almost nothing that was not already before the jury. The jury had heard repeatedly that parents and students had complained about Lee. The only addi-

tional bit of evidence stated in the offer was that parents had asked that their children not be assigned to Lee's class. Thus, for the most part the offer of proof outlined evidence that was cumulative, and we cannot conclude that the district court erred in excluding such testimony. The situation is not unlike that in *Strong*, in which the offer of proof proffered testimony that "would add nothing to what had been admitted." *Strong*, 816 F.2d at 432.

Additionally, the exchange between the court and counsel shows that the court acted to control a witness it deemed unruly. Federal Rule of Evidence 611 authorizes the judge to exercise reasonable control over the mode of interrogating witnesses. *See O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1203 (8th Cir.1990). Storm repeatedly volunteered non-responsive statements, which either resulted in objections or interruptions, sua sponte interruption by the court, or a lengthy answer stricken as not responsive. On at least two occasions the court commented on the generality of the testimony and the impossibility of cross-examination. On one occasion the court sua sponte instructed Storm that he could not talk about common knowledge around the school, and shortly thereafter sustained an objection to testimony that the children would have already heard horror stories about going to Lee's class.

The district court also excluded Assistant Principal Voight's testimony that parents and students had complained that Lee refused to keep them apprised of their grades. The court ruled that Voight's testimony was hearsay. The testimony again was cumulative, and the School District in its brief admits as much, arguing that the corroborative nature makes it admissible.[2]

---

**1.** Although the requirement of the Negotiated Agreement was only one of several grounds for the district court's ruling, the School District argues that the court's ruling permits a private agreement to alter the law of evidence. This argument misses the point. The terms of the Negotiated Agreement cannot change the hearsay rules, but in limiting what administrators are permitted to consider in evaluating teachers, the Agreement affects the relevance of certain kinds of evidence.

**2.** We have in numerous cases admitted complaints received about an employee and have held them to be determinative. In *Halsell v. Kimberly–Clark Corp.*, 683 F.2d 285, 291 (8th Cir.1982), *cert. denied*, 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983), although no question was raised as to admissibility of the evidence, we considered complaint testimony of a far more specific nature. *Cox v. Miller County R–I School Dist.*, 951 F.2d 927, 930–32 (8th Cir. 1991), is a similar decision, with a written record being kept of such complaints, and with

The district judge did not abuse his discretion in refusing to allow the testimony proffered in the offer of proof.

■ Even if we decided that the court acted incorrectly in excluding the proffered testimony, Federal Rule of Evidence 103(a) states: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." We are not persuaded that the district court's rulings were inconsistent with substantial justice. *Strong*, 816 F.2d at 432.

We affirm the judgment of the district court except that we remand for the award of liquidated damages in accordance with this opinion.

BEAM, Circuit Judge, concurring and dissenting.

I agree with the dissent that the evidence of student and parent complaints was not hearsay and that the offer of proof was more than sufficient to apprise the district judge of the nature of the facts being proffered. I agree with the majority, however, that under *Strong v. Mercantile Trust Co.*, 816 F.2d 429 (8th Cir.1987), *cert. denied*, 484 U.S. 1030, 108 S.Ct. 759, 98 L.Ed.2d 771 (1988), the substantive value of the excluded evidence was not sufficient for us to reverse and remand this case for a new trial. Thus, I concur in the result reached in the majority opinion on that issue.

I partially join the dissent on the issue of liquidated damages. There was clearly insufficient evidence of willfulness for a judgment for liquidated damages to have been imposed. Thus, I would hold that the district judge erred in awarding any liquidated damages. Having adopted this position, I would not reach the question dealing with discretion to award less than double

damages under the liquidated damages scheme advanced by the ADEA.

LOKEN, Circuit Judge, joined by BOWMAN and WOLLMAN, Circuit Judges, dissenting:

I respectfully dissent from the court's decision for three reasons. First, I would grant the School District a new trial because evidence of oral complaints was improperly excluded. Second, I would hold that the evidence was insufficient to support an award of liquidated damages as a matter of law. Third, if liquidated damages are awarded, I would uphold the district court's discretion to limit those damages to $10,000.

*A.  Exclusion of Complaint Testimony.*

The School District alleged that Lee's contract was not renewed because of his poor performance as a teacher. Principal Wes Storm and Assistant Principal Curt Voight made the initial decision not to renew. Their notice of nonrenewal advised Lee that two of the reasons for the recommended discharge were his poor relationships with parents and students and his inappropriate handling of student problems and needs. Though the key issue in the trial was whether these stated reasons were a pretext for age discrimination, the district court ruled that Storm and Voight could not testify as to oral complaints they received from parents and students about Robert Lee's teaching performance; unless a complaint had been reduced to writing and made part of the School District's business records, testimony about it would be inadmissible hearsay.

That hearsay ruling was error. As our prior decisions cited in footnote 2 of the court's opinion recognized, such evidence is not hearsay if offered, as the School Dis-

testimony from complaining parents being received in evidence. The evidence in both these cases was far different from the extremely general information which the offer of proof in this case sought to introduce, and as the district court observed, cross-examination or testing of such evidence would have been impossible. In *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097 (8th Cir.1988), we held it error to refuse infor-

mation going to motive, but we cited a Seventh Circuit opinion stating that a paper trail is seldom made of motives giving rise to a discrimination claim. *Id.* at 1103. In this case School District regulations required just such a paper trail if the district were to use the complaints to evaluate a teacher. Our earlier cases do not dictate a different result than that which we reach today.

trict explicitly offered it, to show the motive of the school administrators in recommending Lee's nonrenewal. *See also McDaniel v. Temple Ind. School Dist.*, 770 F.2d 1340, 1349 (5th Cir.1985); *Crimm v. Missouri Pac. R.R.*, 750 F.2d 703, 709 (8th Cir.1984); *Jones v. Los Angeles Community College Dist.*, 702 F.2d 203, 205 (9th Cir.1983); *Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321 (11th Cir.1982). Indeed, this principle is so well established that the court in *McKenna v. Weinberger*, 729 F.2d 783, 792 (D.C.Cir.1984), in holding admissible supervisor testimony about co-worker complaints, stated that plaintiff's hearsay contention did not warrant extended consideration.

The court appears to acknowledge that the complaint evidence was not properly excludable on hearsay grounds. Thus, our disagreement on this issue is narrow: on this record, I do not agree with the six different reasons the court puts forward to excuse the district court's erroneous hearsay ruling:

*1. Inadequate Offer of Proof.* The key to this issue is that the district court did not consider the offer of proof inadequate. Counsel's offer of proof stated, in part:

He [Storm] would also receive complaints from both students and parents concerning Mr. Lee's teaching of various sorts, *which he can relate in detail,* and that is why that comment is placed in the ... December 19, 1986 conference review and that needs to be explained.

(Emphasis added.) In rejecting the offer of proof, the district court stated:

I note your offer of proof, but number one, it's hearsay, rank hearsay; number two, it doesn't come within ... any exception that I know.... I note your offer of proof; I refuse it, and it will stay as it is.

In other words, all testimony as to specific oral complaints was excluded as inadmissible hearsay, regardless of how detailed that testimony might be.

"A party offering proof which is excluded at trial preserves the record on appeal by telling the court what the evidence will tend to prove." *Estes v. Dick Smith Ford,*

*Inc.,* 856 F.2d 1097, 1104 (8th Cir.1988). As explained in point 6 below, this is not a case where the testimony summarized in the offer of proof would add nothing to what was admitted, as in *Strong v. Mercantile Trust Co.,* 816 F.2d 429, 431–32 (8th Cir. 1987), *cert. denied,* 484 U.S. 1030, 108 S.Ct. 759, 98 L.Ed.2d 771 (1988). Nor is it a case where the offer of proof failed to alert the district court to the nature of the evidence sought to be admitted, as in *Royal v. Missouri Highway & Transp. Comm'n,* 714 F.2d 867, 869 (8th Cir.1983). Here, the district court understood the nature of the offer of proof and rejected it in its entirety, without asking counsel to spell out particular details. I conclude that the issue was properly preserved for appeal.

*2. The Negotiated Agreement.* The court suggests that the excluded complaint testimony was irrelevant because the School District's collective bargaining agreement prohibited reliance upon complaints not in writing. I disagree. The ADEA is concerned with whether the School District's nonrenewal decision was *in fact* based upon oral parent and student complaints, not with whether such action might have violated its Negotiated Agreement with the teachers. Noncompliance with the Negotiated Agreement no doubt would have weakened the credibility of Storm's and Voight's testimony that their nonrenewal decision was motivated by the oral complaints, but it did not render that motive evidence irrelevant.

*3. Impossibility of Cross Examination.* The district court justified its hearsay ruling by noting the "impossibility" of cross examining the school administrators about oral, as opposed to written, complaints. I agree that it is difficult to cross examine a witness who has testified to oral complaints by third persons. But that is an argument for making all such evidence inadmissible in ADEA cases, an issue we have decided in favor of admissibility. Cross examination may still be effective, and the less specific the hearsay is, the more effective the cross examination is likely to be. I find no peculiar problems of cross examination in this case warranting a

departure from our general rule that complaint testimony is admissible to show the motive of the School District officials who made the decision to recommend nonrenewal.

*4. The Evidence Was Cumulative.* I agree with the court that the jury heard some general testimony that there were parent and student complaints of Lee's performance as a teacher. But the district court repeatedly cut off any explanation as to the nature of those complaints. Given the importance of this evidence to the School District's defense, I cannot conclude that only cumulative evidence was excluded.

*5. Controlling an Unruly Witness.* In my view, the record does not support the court's assertion that the evidentiary rulings were made merely to control overly voluble witnesses. Some of the district court's rulings—such as instructing Storm not to talk about common knowledge about the school—were clearly appropriate to control the witness. But the district court's post-trial memorandum rejecting the School District's offer of proof confirmed that its key rulings as to oral complaints were based primarily upon the court's mistaken view of the hearsay question.

*6. Substantial Right Not Affected.* I agree with the court that this erroneous exclusion of evidence is not reversible error unless it adversely affected the School District's substantial rights. The district court repeatedly excluded testimony by the school administrators detailing complaints they had received from parents and teachers about Lee's performance during the 1986–1987 school year:

> Q [to Storm]. Did you receive any phone calls from parents that concerned

the subject of their students, their children being [assigned to] Mr. Lee's class?

> \* \* \* \* \* \*

> THE COURT: I will sustain the objection. Get on to something else, please. (Tr. 363–364)

> \* \* \* \* \* \*

> Q [to Voigt]. Did any parents or kids come to you with complaints about these incompletes? [3]

> \* \* \* \* \* \*

> THE COURT: Now, in that form, I am going to sustain the objection.... [Y]ou are listing additional information that is not documented, apparently; at least if it is documented, then go ahead to the documents and we will talk about it. (Tr. 411–412)

This testimony went to the heart of the School District's defense that the reasons given for Lee's nonrenewal were not pretextual. It was wrongly excluded as inadmissible hearsay, and in making those rulings the district court could not help but make clear to the jury its disapproval of that evidence.

Our prior decisions demonstrate the significance of this type of complaint testimony. Such evidence was held to justify a directed verdict dismissing an ADEA claim in *Halsell v. Kimberly–Clark Corp.,* 683 F.2d 285 (8th Cir.1982), *cert. denied,* 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983), and a JNOV in favor of the defendant school superintendent in *Cox v. Miller County R–I School Dist.,* 951 F.2d 927 (8th Cir.1992). For these reasons, I conclude that this is the kind of prejudicial evidentiary error that denied the School District a fair opportunity to present its case and therefore requires a new trial.

*B. Liquidated Damages.*

The jury made a finding that the School District's ADEA violation was willful.[4]

---

3. This incomplete grades episode was a major issue at trial, since the monitoring of Lee's classrooms did not begin until October 1986, when School District staff discovered that he had given over 30% of his students in one class incompletes for the first nine-week grading period.

4. The jury's finding was made under an instruction that is not challenged on appeal but that

may not survive the Supreme Court's review of *Biggins v. Hazen Paper Co.,* 953 F.2d 1405 (1st Cir.1992), in which certiorari was granted to consider whether, "in light of varied and inconsistent approaches of circuits, may 'knew or showed reckless disregard' for liquidated (double) damages liability announced in *Trans World Airlines, Inc. v. Thurston,* [469 U.S. 111,

The district court then held that the evidence was sufficient to support an award of liquidated damages under 29 U.S.C. § 626(b), but that the equities required an award of $10,000, an amount less than the double damages authorized by the statute. The court sustains the award of liquidated damages and then, with no discussion of the issue, holds that the district court had no discretion to reduce the amount of this equitable damage remedy. I dissent from both of those decisions.

1. The district court upheld the jury's finding of willfulness because

> it was clear to both the jury and the Court that the total number of visits to Mr. Lee's classroom by the principal and vice-principal, which exceeded 30 visits in a two month period, was a deliberate and conscious attempt to force the Plaintiff into early retirement.

However, the visits in question were made *after* Lee received the notice of nonrenewal, at a time when Lee had expressed his determination to contest the school administrators' decision and both sides were preparing for the hearing afforded under state law. In other words, this case was not about "constructive discharge" and "early retirement." Lee was discharged (nonrenewed), the formal discharge procedure was commenced by the School District, and the parties settled that process (without settling Lee's potential ADEA claim) short of a formal hearing. For the district court to conclude that the School District's conduct in the hearing preparation and settlement process is evidence that the earlier nonrenewal notice was a willful violation of ADEA is a plain misreading of the evidence, the statute, or both.

This court seems to agree, for it upholds the jury's finding of willfulness because of testimony by the school board president that he did not place a premium on experience in hiring new teachers. This witness—*who did not make the decision to send Lee the nonrenewal notice*—admitted that his view as to new hires should not

bear upon decisions whether to retain teachers already hired. If anything, this testimony supports the School District's claim that Lee's nonrenewal was not the product of age discrimination.

Thus, both the district court and this court are unable to harmonize the jury's finding of willfulness with the heightened standard adopted by the Supreme Court in *Thurston*, 469 U.S. at 125–30, 105 S.Ct. at 623–26. The reason, I believe, is that Lee produced not even a scintilla of evidence that the nonrenewal notice was a willful violation of ADEA. The issue should not have been submitted to the jury. I would reverse the award of liquidated damages.

2. Our court has never considered whether a district court has discretion to award less than double damages following a finding that an ADEA violation was willful. The court now decides that important issue without analysis, simply citing the unsupported assertion in *Spanier v. Morrison's Management Serv., Inc.*, 822 F.2d 975, 979 (11th Cir.1987), that the Supreme Court "by implication" rejected such discretion in *Thurston*. I disagree.

The liquidated damages remedy in § 626(b) was derived from a similar remedy contained in the Fair Labor Standards Act. In 1947, Congress amended the original, virtually automatic FLSA liquidated damages provision to provide for a good faith defense, now found in 29 U.S.C. § 260. Congress did not incorporate § 260 into the ADEA, but § 626(b)'s requirement of willfulness reflects "the same concerns." *Thurston*, 469 U.S. at 128 n. 22, 105 S.Ct. at 625 n. 22. Thus, the question whether double damages for a willful violation are discretionary turns on whether, "[w]hen a jury finds willfulness, as defined by *Thurston*, it has already factored the possibility of good faith into its examination." *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1561 (11th Cir.1988).

---

105 S.Ct. 613, 83 L.Ed.2d 523 (1985),] properly be applied to claims for individual discriminatory treatment under ADEA?" —— U.S. ——, 112 S.Ct. 2990, 120 L.Ed.2d 868 (1992). On remand,

I believe the district court should consider deferring its final disposition of the liquidated damages issue until the Supreme Court's decision in *Biggins*.

If the rigorous standard of willfulness intended in *Thurston* was actually reflected in the jury's verdict, I might agree with the Eleventh Circuit that the concepts of "good faith" and "willful violation" are mutually exclusive. However, as the Supreme Court's grant of certiorari in *Biggins* seems to acknowledge, the application of *Thurston* under instructions of the kind given in this disparate treatment case is anything but rigorous.

Here, the district court strained to uphold a suspect finding of willfulness and then invoked its equitable discretion to award less than the maximum double damages authorized by the statute. In an exercise of logic untempered by fairness, this court upholds the jury finding and then nullifies the exercise of discretion. Given the reaction of Congress to a similarly harsh application of the FLSA liquidated damages remedy, and the Supreme Court's interpretation of § 626(b) in *Thurston*, I conclude that the statute authorizes, but does not require, an award of double liquidated damages. Therefore, since the court sustains the jury's finding of willfulness, I would affirm the district court's discretionary reduction of that award to $10,000.

APPENDIX

(Panel Opinion)

Robert L. Lee, Appellee,

v.

Rapid City Area School District No. 51-4, Appellant.

No. 90-5499

No. 90-5500

Submitted: May 17, 1991

Filed: February 3, 1992

Appeals from the United States District Court for the District of South Dakota.

Before JOHN R. GIBSON, Circuit Judge, ROSS, Senior Circuit Judge, and LOKEN, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Rapid City Area School District No. 51-4 appeals from a judgment entered on a jury verdict in favor of Robert L. Lee on his claim that the School District constructively discharged him from his job as a teacher because of his age. The School District argues that the district court should have granted it judgment notwithstanding the verdict or a new trial because Lee abandoned his discrimination claim by quitting his job without pursuing his state administrative remedies and because Lee failed to carry his burden of proof by showing he was qualified to do his job. The School District also argues that the district court erred in excluding on hearsay grounds evidence of complaints about Lee; in instructing the jury incorrectly; and in failing to grant a mistrial in response to certain comments Lee's counsel made in closing argument. Lee cross appeals, attacking the district court's reduction of the liquidated damages and the amount of the attorneys' fee award. We affirm in part and reverse and remand in part.

In 1961 Lee began a teaching career at West Junior High School that would span twenty-five years, through the 1986–87 school year. During the 1986–87 school year, he turned 65, making him the oldest teacher in the School District. He was then at the top of the school's pay scale, with a salary of $29,113.00.

Over the years he had been evaluated periodically with satisfactory results. In the 1970 and 1973 school years the administrator rated his performance at average and above average. In 1976 the evaluation noted a wholesome learning environment and the good relationship Lee maintained with parents. In 1979 Lee received good ratings on organization and planning and commendations for his commitment to teaching.

The first sign of trouble came in 1981–82, the year after Wes Storm was appointed principal of Lee's school. Storm evaluated Lee that year. While he recommended Lee for rehiring without qualification, he stated that it was "difficult" to do so, and that he was "doing [it] with the hopes of seeing a constructive atmosphere in the classroom. If this doesn't take place, I'll need to pur-

sue other options." He labeled Lee's teaching as "sterile and blah" and noted that Lee needed improvement in four out of seven categories. Storm evaluated Lee again in the 1984–85 year and stated that his style and manner of teaching was logical and well organized. His performance generally met expectations and he was given full recommendation for rehiring. The only possible criticism was the suggestion that Lee make an effort to extend himself outside the classroom. In the 1985–86 year he was evaluated by Curt Voight, the assistant principal of West Junior High, who concluded generally that Lee was performing in a manner which met the expectations of the administration and recommended him for employment without qualification, but did express concern over the number of pages Lee was covering in the textbook.

In late October 1986, Storm and Voight began a series of visits to Lee's classroom. The two administrators visited Lee's classrooms approximately 32 times between October and May. Storm came into the classroom and evaluated Lee's performance on October 22, 23, and 24 and then, following a weekend, returned on October 27, 28 and 29. On October 30, Storm gave Lee a conference review of comments and criticism based on Lee's performance in the classroom. In the conference review Storm criticized Lee's teaching practices, paying particular attention to questioning techniques and instructional management. He required Lee to submit weekly lesson plans and suggested that he use a particular text, *Bloom's Taxonomy*, in his questioning techniques. Voight also visited Lee's classroom twelve to fifteen times, detailing Lee's classroom performance minute by minute. Storm and Voight criticized Lee's handling of student disciplinary problems, his enforcement of his bathroom pass policy, and his use of the grade "I" for incompletes. On January 14, Storm offered Lee two plans of assistance, specifying a "lack of instructional competence" as Lee's deficiency. The plans recommended (among other things) that Lee use *Bloom's Taxonomy;* use a more enthusiastic tone of voice; view instructional videotapes; and visit other staff. Lee's plans were to be completed by March 2, 1987. Storm scheduled conferences for February 13 and 27 to gauge Lee's progress, but these conferences were never held.

On March 13, 1987, Storm wrote Lee informing him that he would not recommend renewal of Lee's contract for the coming year. At Lee's request, Storm detailed the reasons for the non-renewal recommendation: (1) inadequate lesson preparations and very little concern for plans of assistance; (2) poor relationships with parents and students; and (3) inappropriate handling of student problems and needs.

On April 2, Lee received notice that the Board of Education had determined not to renew his contract, and Lee thereafter requested a list of the reasons for the Board's determination as well as a hearing before the Board and a transcript of that hearing. The Board granted the request for the hearing but denied the request for a transcript, and told Lee that it would state the reasons for its determination at the hearing and not before. The Board president explained that in sending Lee the non-renewal letter the Board relied on the administrator's recommendation, rather than any independent review of Lee's records.

There was also evidence that the Board president had stated at a Board meeting that there was not a positive correlation between years of experience in the classroom and competence, and because money was hard to come by, he believed the Board should explore the feasibility of hiring second, third- and fourth-year teachers as opposed to sixth-, seventh- and eighth-year teachers.

Lee arranged to be reviewed by an independent evaluator, and the results were not favorable to him. Following this review, Lee resigned, effective May 27, 1987, and signed an agreement with the School District under which he was to be paid $5,000 per year in four annual installments. Under the agreement, Lee was to continue teaching through the end of the school year, to tender his resignation, and to withdraw "all grievances filed by Mr. Lee." Lee refused to sign a "Release in Full of

All Claims" tendered him by the School District.

The School District replaced Lee with a younger teacher at a salary of $14,926. Lee then brought this action under the Age Discrimination in Employment Act. The case was submitted to the jury on the theory that the School District had constructively discharged Lee by deliberately making his working conditions intolerable so that a reasonable person in his position had no choice but to quit or resign, and that age was a determining factor in the district's actions.

By special interrogatories the jury found that the School District did constructively discharge Lee; that Lee's age was the determining factor in the decision to do so; that Lee sustained actual damages of $22,140 as a result of the determination; and that the School District's decision not to renew was willful. The district court entered judgment for $22,140 for backpay, $39,664.85 for front pay, $10,000 for liquidated damages, and $18,322.50 for attorneys' fees.

### I.

The School District first argues that the district court erred in denying its motion for judgment notwithstanding the verdict because Lee quit his job and thereby waived his discrimination claim. The School District argues that after consulting with his attorney and his union representative, Lee made a knowing and voluntary decision to forego his state law procedural rights and to retire, and that he is therefore precluded from asserting the age discrimination claim.

■ Our standard in reviewing a refusal to enter a judgment notwithstanding the verdict is extremely narrow. We apply the same standard as the district court applies in considering the j.n.o.v. motion, which requires that we:

1) consider the evidence in the light most favorable to [Lee], who prevailed with the jury; 2) assume that all conflicts in the evidence were resolved by the jury in

[Lee's] favor; 3) assume as proved all facts which [Lee's] evidence tends to prove; 4) give [Lee] the benefit of all favorable inferences which may reasonably be drawn from the facts proved; and 5) affirm the denial of the motion if reasonable persons could differ as to the conclusions to be drawn from it.

*Morgan v. Arkansas Gazette,* 897 F.2d 945, 948 (8th Cir.1990) (quoting *Gilkerson v. Toastmaster, Inc.,* 770 F.2d 133, 136 (8th Cir.1985)). To further confine our review, we have also stated that we will not consider in our analysis evidence favorable to the moving party. *See Morgan,* 897 F.2d at 948–49.

■ The School District argues that Lee "waived, abandoned, or is estopped from asserting his age discrimination claim" because he quit his job. Obviously, if Lee had quit his job freely and totally of his own volition, he could not claim that the School District discriminatorily fired him (as he does). Indeed, the district court instructed the jury: "If you find that the plaintiff voluntarily resigned from his employment, then defendant did not terminate plaintiff's employment, either actually or constructively." But the jury answered a special interrogatory finding that the School District constructively discharged Lee by "deliberately [making] plaintiff's working conditions intolerable so that a reasonable person in the position of the plaintiff had no other choice but to quit or resign." The testimony at trial established an intense pattern of classroom observation, criticism, and evaluation commencing on October 22, and culminating in Lee's resignation in May 1987. Lee testified that he suffered from anxiety as a result of harassment by the administrators and that he needed tranquilizers to sleep at night. The evidence which we have set out above cataloging the 32 visits to Lee's classroom supported the jury's finding that the School District deliberately made Lee's working conditions intolerable so that a reasonable person in his position had no choice but to quit or resign.

Nevertheless, the School District has three theories to support its waiver argu-

ment. First, the School District cites *Reiff v. Avon School District No. 4-1*, 458 N.W.2d 358 (S.D.1990), a state court case in which the South Dakota court held that it had no jurisdiction to hear a teacher's civil rights suit arising out of her firing, because she had failed to pursue her state administrative remedy. We do not see the relevance of the *Reiff* case, since the District conceded in oral argument that there is no applicable exhaustion of state remedies requirement and there is no question that we have jurisdiction over this case.

■ Second, the District cites *Nichols v. City of St. Louis*, 837 F.2d 833 (8th Cir. 1988), and *Stillians v. Iowa*, 843 F.2d 276 (8th Cir.1988), arguing that had Lee pursued his state administrative remedies and lost, he could have been precluded from asserting his claims in federal court. Therefore, the School District argues, Lee's position cannot be better when he abandoned his state administrative remedies before receiving an adjudication. We need not belabor this argument beyond citing *Astoria Federal Savings and Loan Association v. Solimino*, — U.S. —, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991), which precludes us from accepting the School District's argument.

■ Third, the School District argues that Lee waived his ADEA claim when he signed an agreement to retire in exchange for $20,000. In the agreement Lee agreed that "[a]ll grievances filed by Mr. Lee shall be withdrawn." The term "grievance" clearly refers to something already filed, not the possibility that Lee might file an ADEA claim in the future. Indeed, the School District presented Lee with a general "Release in Full of All Claims," which he refused to sign. We discern no waiver of the ADEA claim.

The School District argues that there is insufficient evidence that Lee was constructively discharged. We have already reviewed the evidence supporting this finding, and it is more than adequate. *See Morgan*, 897 F.2d at 948.

■ The School District also argues that Lee made no prima facie case that he was "qualified"—that is, "doing his job well enough to rule out the possibility that he was fired for inadequate job performance." *Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285, 290 (8th Cir.1982) (citations omitted), *cert. denied*, 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983). As we have discussed above, there was evidence of Lee's satisfactory evaluations beginning in 1970 and continuing through the 1985–86 school year. There was some criticism in the 1981–82 school year, but also a recommendation of rehiring without qualification for that year. There were isolated criticisms in 1984–85, that Lee should extend himself outside the classroom and in 1985–86, that he was not covering enough pages in the book. The court instructed the jury that in determining whether age was a determining factor in the District's decision to fire Lee, it should consider whether he was performing his job at a level that met defendant's legitimate expectations. The evidence of Lee's acceptable performance up until the 1986–87 school year, together with Lee's testimony about his own performance during that year, presents sufficient evidence for a jury to conclude that Lee's performance was adequate.

II.

The School District contends that the district court erred in excluding testimony of Storm and Voight that they had received complaints from students and parents about Lee. This argument bears on a number of evidentiary rulings.

First, the School District's counsel asked principal Storm if he had heard reports on how Lee was perceived. Counsel for Lee objected that School District "rules and regulations" required that a complaint be in writing. (The Negotiated Agreement between the School District and the Rapid City Education Association required that any complaint about a teacher used in any manner in evaluating that teacher had to be reduced to writing.) The district judge ruled that the witness could only state generally that he had received complaints, un-

less a particular complaint had been reduced to writing. Storm then stated that "the overall tone of some students was negative."

Later, defense counsel asked Storm about his statement at the conference review of December 19, 1986, that students and parents felt Lee "lacks a real concern" for his students. When counsel asked Storm whether students and parents had expressed the concern he wrote about, the court established that only one such objection had been reduced to writing, that of a Mrs. Wood. The court stated that it was "totally impossible to cross-examine [Storm] when he talks in generalities," and the School District's counsel withdrew the question. Thereafter, Storm testified about Mrs. Wood's complaint regarding Lee's conduct toward her. Counsel then asked Storm if he received calls from parents before the start of school about children being in Lee's class, and the court excluded this evidence on the grounds that it regarded "generalities" for which there was "no possible way to cross-examine" Storm.

Counsel for the School District then made an offer of proof that Storm would testify that he had received "innumerable complaints" from parents at the beginning of the school year asking that their children not be placed in Lee's class "because of his reputation which was rampant throughout the community that attended West Junior High School." Counsel further offered to prove that Storm received complaints from both students and parents concerning Lee's teaching, and these complaints were the basis for the comment in the December 19, 1986, conference review. Counsel stated that the evidence would tend to prove that Lee was not terminated because of his age, but because of incompetence as a teacher.

The court ruled that part of the evidence requested was hearsay, because it was not a business record but was in fact offered for its truth, and buttressed its ruling by noting that the witness was giving nonresponsive answers, "like opening a flood gate." The court made similar rulings on similar testimony the District sought to elicit from Mr. Voight.

The School District recognizes that the district court has wide discretion in ruling on the admissibility of evidence and that the ruling will not be disturbed unless there is a clear and prejudicial abuse of discretion. *Maddox v. Patterson*, 905 F.2d 1178, 1179 (8th Cir.1990). But, the School District argues that the statements were admissible to show why the District was evaluating Lee's performance, to corroborate other evidence, and to demonstrate the School District's motive.

We believe that the district court did not err in its rulings. It made clear that Storm could testify that he received complaints, and it admitted evidence to this effect. The district court also ruled that it would not allow the witness to refer to specific complaints unless they had been reduced to writing so that the witness could be cross-examined on the specifics of the testimony. The court referred to the School District's "rules" requiring that complaints be reduced to writing if they were to be used in evaluating a teacher. The documentation concerning Mrs. Wood's complaint was admitted and Storm testified about this specific complaint. However, some other testimony was excluded, at least partially on this basis. Certainly, the terms of the Negotiated Agreement do not affect the rules of evidence and what is hearsay, but they do affect what the administrators may properly consider in evaluating a teacher and thus may render certain items irrelevant. The court's rulings were also based in part upon the expansive nature of the witness' earlier answers and upon the need to control his testimony. Moreover, the offer of proof was extremely general in nature and did not point to any particular items of evidence. Under these circumstances, we cannot conclude that the district court abused its discretion.

### III.

The district also argues that the district court erred in various respects in instructing the jury, particularly, that it misinter-

preted South Dakota's continuing contract law; that it misstated the burden of proof placed on Lee; and that it erroneously submitted the issue of willfulness.

■ The court instructed the jury that under South Dakota law, a school district may dismiss or refuse to renew the contracts of tenured teachers for cause, which is defined as a plain violation of contract, gross immorality and competency, or flagrant neglect of duty. The School District argues that this instruction is improperly based on Section 13–43–15 (1991), which deals with dismissal during the school year, and does not govern a Board's decision not to renew a teacher's contract for the next year. As we read South Dakota law, the School District is correct in this respect. Section 13–43–15 authorizes dismissal of "any teacher at any time," while another statute prescribes the procedure for nonrenewal of tenured teachers, S.D.Codified Laws Ann. §§ 13–43–9.1 to 13–43–10.1 (1991). In order to dismiss a teacher there must be one of several enumerated types of cause, § 13–43–15, but to deny renewal of a contract the School District is only required to have a reason that is not arbitrary or unreasonable. *See Jager v. Ramona Bd. of Educ.*, 444 N.W.2d 21, 25–26 (S.D.1989).

■ But, though this instruction incorrectly states South Dakota law on the possible grounds for nonrenewal, we are satisfied that it is harmless error. Regardless of the possible permissible reasons for declining to renew Lee's contract under South Dakota law, the reason the District put forth for its action was incompetence. Therefore, since the effect of the instruction was to place on the School District the burden of proving the same fact it had chosen to make its defense under the ADEA, the instruction error was harmless beyond a reasonable doubt.

■ The School District attacks that jury instruction setting out the burden of proof, claiming that the instruction did not sufficiently expound all the ramifications of the plaintiff's burden of proving he would not have been discharged but for his age. However, the instruction does very clearly state that Lee had the burden of proving that "but for the motive of defendant to discriminate against plaintiff because of his age, plaintiff would not have been discharged." The additional statements the School District sought to include in the instruction are simply amplifications of the correct statement of the law the court actually gave; once the court had correctly stated the law it was not error to refuse the School District more icing on the cake.

■ Finally, the School District argues that the district court should not have submitted a willfulness instruction because Lee did not make a submissible case on this issue. Again, our standard of review for determining whether Lee made a submissible case is whether there is substantial evidence in the record supporting Lee's position, viewing the evidence in the light most favorable to Lee. *See* p. 321, *supra*. A violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128, 105 S.Ct. 613, 625, 83 L.Ed.2d 523 (1985); *see also McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).

We are satisfied that this issue was submissible. The president of the School Board testified that he believed and had communicated to the rest of the Board that after a short period in teaching a teacher's competence did not increase with additional experience and that therefore the Board should hire "second- and third- and fourth-year teachers as opposed to six, and seven, and eight under the assumption, again, that there is no documentation that would demonstrate that a teacher's competence increases positively and directly with additional numbers of years in the classroom." The Board president's testimony indicates an awareness that if this "assumption" were applied in the context of nonrenewal of teachers already employed in the district, it would involve "constitutional issues," which he had earlier defined as

"race, sex, age." This awareness of the legal problems attendant on firing an older teacher in order to replace him with a less expensive younger teacher, together with the evidence earlier recounted indicating that Lee was discharged without a legitimate reason and that a younger person was hired in his place, amounts to a submissible case on willfulness.

## IV.

The School District argues that certain comments Lee's counsel made in closing argument were so improper that the district court should have granted a new trial. Control of closing arguments is entrusted to the district court's discretion, *Griffin v. Hilke*, 804 F.2d 1052, 1057 (8th Cir.1986), *cert. denied*, 482 U.S. 914, 107 S.Ct. 3184, 3185, 96 L.Ed.2d 673 (1987), and we may reverse only for abuse of that discretion. *Id.*

The School District argues that there was error in permitting Lee's counsel to refer to South Dakota's continuing contract law as providing a "kangaroo court." The term was used in the trial testimony and the School Board president testified about the statutory hearing:

Q: And it could be a kangaroo court; you admit that?

A: Yes.

To constitute reversible error, statements made in closing must be plainly unwarranted and clearly injurious. *Pearce v. Cornerstone Clinic for Women*, 938 F.2d 855, 859 (8th Cir.1991). This argument was based on the record and it was not error to permit it.

The School District also argues that the district court should have declared a mistrial when Lee's counsel identified the School District's trial counsel as the drafter of the general release that the School District presented to Lee and that Lee refused to sign, though the identity of the drafter was not in evidence. The district court sustained an objection to the comment, but denied the School District's motion for mistrial. We cannot say that the district court's refusal to grant a mistrial was inconsistent with substantial justice, *see Tyler v. White*, 811 F.2d 1204, 1206 (8th Cir. 1987), and therefore we will not reverse on this ground.

The School District also complains that Lee's counsel improperly stated South Dakota law in telling the jury that Lee had "the right not to have this done to him unless he was incompetent or gross neglect of duty [sic]." In light of the fact that the School District's defense was that Lee was indeed incompetent, we are satisfied that any misstatement of South Dakota law by counsel was harmless.

## V.

The School District also argues that the district court erred in failing to order a new trial on the grounds that the verdict was against the weight of the evidence. The School District argues that the district court denied its motion for a new trial because the court was laboring under various misapprehensions of South Dakota's continuing contract law for teachers. We have observed before that error cannot ordinarily be predicated upon a denial of a motion for a new trial on the ground that the verdict was against the weight of the evidence and that the rule permitting us to reverse a ruling on a new trial motion for abuse of discretion may well be limited to orders *granting* new trials. *Green v. American Airlines, Inc.*, 804 F.2d 453, 455 (8th Cir.1986). Indeed, we have questioned our constitutional authority to enter an order requiring a new trial. *Id.* Suffice it to say, we reject the argument that the district court abused its discretion in denying the School District's motion for a new trial.

## VI.

Lee cross appeals, challenging the district court's action in reducing his liquidated damages from $18,322.50 to $10,000.

Under the ADEA a successful plaintiff is entitled to liquidated damages if the ADEA violation was willful, 29 U.S.C. § 626(b) (1988), incorporating by reference 29 U.S.C.A. § 216(b) (West Supp.1991).

The statute refers to liquidated damages in "an additional equal amount," 29 U.S.C.A. § 216(b), to the "amount owing to a person as a result of a violation" of the ADEA. 29 U.S.C. § 626(b). In this case, although the district court awarded $22,140 for backpay (with interest) and $39,664.85 for front pay, it awarded only $10,000 in liquidated damages, relying on its "discretionary authority to reduce a liquidated damages award under the ADEA." *Lee v. Rapid City Area Sch. Dist. No. 51-4*, No. 89–5063, slip op. at 5 (D.S.D. July 26, 1990). There is no such discretionary authority, *Spanier v. Morrison's Management Services, Inc.*, 822 F.2d 975, 979 (11th Cir. 1987), and this case must be remanded for the award of full liquidated damages, taking into account the School District's arguments as to what should be included in that calculation.[5]

Lee also argues that the district court erred in not awarding the amount of attorneys' fees Lee owes under a contingent fee arrangement with counsel; that the district court's award of fees at the rate of $100 per hour was not adequate; and that the court erred in refusing to award fees for the work of Attorney Stanton on the grounds that Stanton's records were inadequate. We review the amount of the award of attorneys' fees under an abuse of discretion standard. *Patchell v. Red Apple Enters., Ltd.*, 921 F.2d 157, 159 (8th Cir.1990). The district court acted entirely appropriately in basing the fee award on a reasonable hourly rate based on prevailing market rates in the community. *See Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). Lee cannot object to the district court's determination of that rate, since he failed to present the court with evidence of any more accurate figure. The exhibits showing fees paid to Stanton do not show hours spent and also contain fees apparently not attributable to this matter. In light of Lee's failure to prove the amount of time Stanton spent on this case, the district court's disposition of the matter was not erroneous.

### VII.

We affirm the district court's judgment except as it relates to the award of liquidated damages. The liquidated damages award is reversed and the matter remanded to the district court for entry of an appropriate liquidated damages award.

LOKEN, Circuit Judge, dissenting:

I respectfully dissent. I would remand for a new trial because improper jury instructions and the improper exclusion of highly relevant evidence combine to persuade me that the School District was not afforded a fair trial.

*Exclusion of Complaint Testimony.*

In denying the School District's motion for a directed verdict, the district court noted that Lee had no direct evidence of age discrimination; therefore, since the School District had articulated non-discriminatory, performance-based reasons for non-renewal, Lee had the burden of proving that those reasons were a mere pretext for age discrimination.

The notice of non-renewal advised Lee that two of the reasons for the recommended discharge were Lee's poor relationships with parents and teachers and his inappropriate handling of student problems and needs. At the trial, principal Storm and assistant principal Voight were the School District's primary witnesses. Though the key issue in the case was pretext—were their stated reasons for recom-

---

**5.** The School District argued in its Reply Brief that the amount doubled to arrive at the liquidated damages award cannot include the front pay award. Reply Brief at 12, citing *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1210 (7th Cir.1989); *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1556 (10th Cir.1988); *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1348–49 (9th Cir.1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 870 (1988). The School District also argues that the award should be offset by the settlement amount Lee received from the School District. The District Court did not deal with these points, nor did Lee brief them in this court. Consequently, we believe these issues must be decided, in the first instance, by the district court.

mending non-renewal genuine—the district court repeatedly excluded testimony by these administrators detailing complaints they had received from parents and teachers about Lee's performance in the 1986–1987 school year.[1]

When this issue first came up during defense counsel's examination of Storm, the district court ruled that there could be no testimony as to specific parent or student complaints about Lee unless they had been reduced to writing because "there's no possibility, no chance of cross-examination about that." This ruling was repeated three times during the examination of Storm. Later, when defense counsel asked Voight whether parents and students had complained about the numerous incomplete grades Lee gave out in October 1986—a key incident in the School District's version of why Lee's non-renewal was recommended—the district court again excluded this highly relevant pretext evidence, ruling that the complaints were inadmissible hearsay unless reduced to writing so that they qualified as business records.

It is a well-settled principle of employment discrimination litigation that documents and testimony reflecting complaints about a discharged employee are not hearsay, and are admissible, when offered to show the employer's motive and basis for decision. *See McDaniel*, 770 F.2d at 1349 (transcript of school board hearing admissible to show non-renewal motive and intent); *Crimm v. Missouri Pac. R.R.*, 750 F.2d 703, 709 (8th Cir.1984) (investigative notes and report); *Jones v. Los Angeles Community College Dist.*, 702 F.2d 203, 205 (9th Cir.1983) (prior unsatisfactory service notices). Indeed, this principle is so well recognized that the court in *McKenna v. Weinberger*, 729 F.2d 783, 792 (D.C.Cir. 1984), in holding admissible supervisor testimony about co-worker complaints, stated that plaintiff's hearsay contention did not warrant extended consideration.

Our prior decisions demonstrate the importance of this erroneously excluded evidence. In *Halsell v. Kimberly–Clark Corp.*, 683 F.2d 285, 291 (8th Cir.1982), *cert. denied*, 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983), we held that testimony of "repeated complaints from a variety of sources regarding [plaintiff's] performance" justified a *directed verdict* dismissing plaintiff's ADEA case. And just last month, in an opinion authored by Judge Ross in which Judge John R. Gibson joined, we relied heavily upon parental job performance complaints in reversing a jury verdict in favor of a terminated school bus driver and directing that j.n.o.v. be entered in favor of the school superintendent. *Cox v. Miller County R–I School Dist.*, 951 F.2d 927 (8th Cir.1991).

Two of our employment discrimination cases that raised a different but analogous issue confirm that the district court's evidentiary rulings were reversible error. In *Hawkins v. Hennepin Technical Center*, 900 F.2d 153 (8th Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990), we granted a new trial to the verdict-losing plaintiff because the district court had excluded evidence of prior complaints of discriminatory conduct by the employer. We explained:

> Because an employer's past discriminatory policy and practice may well illustrate that the employer's asserted reasons for disparate treatment are a pretext for intentional discrimination, this evidence should normally be freely admitted at trial.

900 F.2d at 155–156; *see also Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097 (8th Cir. 1988). Just as it is important in these pretext cases that the plaintiff be permit-

---

**1.** The majority recites at great length Lee's satisfactory performance as a teacher prior to the 1986–1987 school year. In my view, this is at most marginally relevant. The School District renewed teachers' contracts each year, and nothing in the ADEA prohibits the School District from basing its renewal decisions on a teacher's most recent performance. Moreover, the record reflects that Lee's difficulties did not begin until October 1986, when School District staff discovered that he had given over 30% of his students in one class incompletes for the first nine-week grading period. The monitoring of Lee's classrooms began as an investigation of that unacceptable grading episode.

ted to show others' complaints of discriminatory conduct by the employer, it is equally important to permit the employer to show third party complaints about the employee that support the employer's proferred non-discriminatory reasons for its action.

The majority suggests that the district court's exclusion of this important evidence was justified because the School District's collective bargaining agreement prohibited reliance upon complaints not in writing. However, whether the School District complied with its own policies or contract obligations is irrelevant to the ADEA pretext inquiry. The ADEA is concerned with whether the employer *in fact* acted upon the parent and student complaints, not with whether it *should* have acted upon those complaints as a matter of state law.

The majority also argues that the district court admitted general testimony of parent and student complaints and thus its exclusion of more detailed testimony was proper to control the witnesses. However, the record does not support the majority's assertion that the district court was merely controlling overly voluble witnesses; as its post-trial memorandum rejecting the School District's offer of proof made clear, the district court's rulings were based upon its mistaken view of the hearsay question.

Finally, I cannot accept the majority's suggestion that the School District's offer of proof was inadequate to preserve this issue on appeal. "A party offering proof which is excluded at trial preserves the record on appeal by telling the court what the evidence will tend to prove." *Estes,* 856 F.2d at 1104. In the face of the district court's repeated adverse rulings, the School District's offers of proof on this question clearly met that standard.

To summarize this issue, I conclude that the evidence of parent and student complaints excluded by the district court went to the heart of the School District's defense, that this evidence was clearly admissible under controlling employment discrimination precedents of this court and other circuits, and that its erroneous exclusion denied the School District a fair opportunity to present its case. Thus, there was clear and prejudicial abuse of discretion that requires a remand for a new trial. *The State Law Issue.*

The majority admits that the district court incorrectly stated the South Dakota law pertaining to teacher non-renewals in its instructions but concludes that this error of law was harmless. I disagree. It is impossible to know whether or not this error affected the jury's decision, but it clearly affected the district court's subsequent rulings upon which its judgment was based. In a post-trial Memorandum Opinion and Order on Motion for Equitable Relief, the district court stated that the jury's finding of willfulness was proper because the non-renewal "was conducted under a facially flawed state statute" that violated Lee's due process rights. This is graphic evidence that the district court's erroneous view of South Dakota law led it far beyond the proper confines of an ADEA case and significantly affected its adverse judgment against the School District.

*Liquidated Damages.*

I also dissent from the majority's decision as to liquidated damages because I do not believe this issue should have gone to the jury. In *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 125–130, 105 S.Ct. 613, 623–626, 83 L.Ed.2d 523 (1985), the Supreme Court noted that ADEA liquidated damages are punitive in nature and held that such damages may be awarded only if the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." In this case, I do not find even a scintilla of evidence that the School District committed such a "willful" violation.

In denying the School District's post trial motion on this issue, the district court stated that the jury's finding of willfulness was supported by plaintiff's constructive discharge evidence. However, this evidence concerned events after the notice of non-renewal that had nothing to do with whether that notice was given in reckless disregard of the ADEA. Implicitly acknowledging the irrelevance of this evidence, the majority relies upon testimony

**336**

by the school board president that he did not place a premium on experience *in hiring new teachers*. This witness—who did not make the decision to send Lee a notice of non-renewal—admitted that his view as to new hires should not be applied to decisions whether to retain teachers already hired. If anything, this testimony supports the School District's claim that Lee's non-renewal did not reflect age discrimination; thus, the majority's assertion that it is somehow evidence of *willful* misconduct under the *Thurston* standard is beyond my comprehension.

*Conclusion.*

For the above reasons, I conclude that the School District is entitled to a new trial because of prejudicial errors of law that tainted the district court's judgment. Even without those errors, however, I would remand for a new trial on the ground that the evidence of intentional age discrimination was legally insufficient. Frequently, when the evidence for the verdict winner was legally insufficient, we have reversed the denial of j.n.o.v. and ordered the entry of judgment for the verdict loser, as in *Cox v. Miller County R–I School Dist., supra,* and in *Frieze v. Boatmen's Bank of Belton,* 950 F.2d 538 (8th Cir.1991). However, I conclude that here the trial was so misfocused by the bogus constructive discharge issue that a new trial is the more prudent and fair appellate disposition.[2]

For the foregoing reasons, I would reverse the judgment of the district court and remand this case for a new trial.

---

**2.** I reject the majority's suggestion that the Seventh Amendment precludes a court of appeals from reversing a district court's denial of a motion for new trial as contrary to the Supreme Court's long-established interpretation of Rule 50 of the Federal Rules of Civil Procedure. *See Neely v. Martin K. Eby Constr. Co.,* 386 U.S. 317,

87 S.Ct. 1072, 18 L.Ed.2d 75 (1967); *Johnson v. New York, New Haven & Hartfod R.R.,* 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77 (1952). Of course, an appellate court should be reluctant to substitute its view as to the weight of the evidence for that of the district court, but the Constitution does not bar such action in an appropriate case.