**MEDTRONIC, INC., a Minnesota corporation, Plaintiff-Appellee,**

v.

**Bradley R. JANSS and Cardiac Systems, Inc., a Georgia corporation, Defendants-Appellants.**

**Bradley R. JANSS, Plaintiff-Appellant,**

v.

**MEDTRONIC, INC., Defendant-Appellee.**

**Nos. 82–5423, 82–5685.**

United States Court of Appeals, Eleventh Circuit.

April 16, 1984.

Michael R. Carey, Tampa, Fla., for Bradley R. Janss and Cardiac Systems, Inc.

Donald A. Gifford, Tampa, Fla., for Medtronic, Inc.

Before HILL and KRAVITCH, Circuit Judges, and MORGAN, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

These appeals arise from diversity actions involving a non-competition agreement between Bradley R. Janss and Medtronic, Inc. Janss challenges the district court's order permanently enjoining him from violating the covenant not to compete and dismissing his declaratory judgment action (No. 82–5423) and the district court's order construing the permanent injunction (No. 82–5685). We affirm the judgment of the district court in No. 82–5423 and dismiss the appeal in No. 82–5685.

I. BACKGROUND

The major suppliers of cardiac pacemakers in central Florida are Medtronic and Cardiac Systems; Cardiac Systems distributes Intermedics brand pacemaker equipment. They generally market their products through sales representatives who receive extensive training in the technical aspects of pacemakers and are in frequent contact with the prescribing physicians and their support personnel. They also employ technical service representatives to attend surgical implantations and to perform follow-up monitoring.

Janss was employed by Medtronic as a sales representative from October 1976 through August 1981. In September 1977, Janss executed an employment contract containing a covenant not to compete which provided:

For 360 days after termination of my employment with the Company, I will not attempt to divert any Company business by soliciting, contacting or communicating with any customers for the Company's product with whom I, or employees under my supervision, had contact during the year preceding termination of my employment.

The contract also provided, "[t]his Agreement and any disputes arising under or in connection with it shall be decided by the laws of the State of Minnesota." Though hired primarily as a sales representative, Janss also performed the functions of a technical service representative. His sales territory consisted of Hillsborough, Pinellas, Pasco, Hernando, Citrus and Polk Counties, Florida.

On September 1, 1981, Janss terminated his employment with Medtronic and was hired by Cardiac Systems as an "independent contractor" to engage in service activities such as attendance at implants and post-operative monitoring. His territory consisted of Hillsborough and Manatee Counties and the cities of Inverness, Winter Haven and Lake Wales. Except for Manatee County, this area was encompassed by the territory he covered while at Medtronic. Immediately after joining Cardiac Systems, Janss contacted several previous buyers purportedly to clarify his new role. However, he was accompanied on visits by the president and local sales representative of Cardiac Systems, and he distributed a business card which identified him merely as a "representative" of Cardiac Systems. On September 3, 1982, Janss brought a declaratory judgment action in a Florida court challenging the covenant not to compete. The next day, Medtronic filed suit in federal court seeking injunctive relief against Janss. The declaratory judgment action was later removed to federal court and consolidated with the suit seeking injunctive relief. Janss discontinued contact with former customers during the ten-day period of a temporary restraining order entered on September 4, 1981.

Upon the expiration of the temporary restraining order, Janss resumed his duties as a technical service representative for Cardiac Systems. His efforts in behalf of Cardiac Systems included attending numerous surgical implants performed by former

customers, providing former customers follow-up services, delivering pacemaker equipment on an "emergency" basis to former customers, and entertaining former customers at Cardiac System's expense. Medtronic moved for leave to amend its complaint in order to name Cardiac Systems as a defendant and to assert damage claims against Janss and Cardiac Systems. Medtronic also moved for separate trials of the issues relating to injunctive relief and damages. The district court granted both motions and, after trial of the injunctive relief issues, found that Janss had violated the covenant not to compete. In its order of March 4, 1982, the court enjoined further violations for a period of 350 days and dismissed Janss' declaratory judgment action.

In April 1982, Janss was offered a position with Southern Surgical Specialties, Inc. selling disposable surgical staples used in connection with abdominal surgery. Southern Surgical's products do not compete with those of Medtronic; Cardiac Systems and Intermedics have no interest in Southern Surgical; and Janss' responsibilities were to involve no pacemaker equipment. At this time, Janss was still associated with Cardiac Systems and performed various functions relating to pacemakers outside the restricted territory. On April 12, 1982, Janss filed a motion for construction of permanent injunction in effect seeking approval of the arrangement with Southern Surgical. In its order of May 12, 1982, the district court construed its injunction to prohibit such employment, noting that Janss would have contact with his former customers and that he continued to represent one of Medtronic's competitors.

Janss separately appealed the orders entering and construing the permanent injunction, and the two appeals have been consolidated. The permanent injunction expired by its terms on February 16, 1983. On March 31, 1983, Medtronic moved that the consolidated appeals be dismissed as moot. On May 23, 1983, a panel of this court ordered that the motion be carried with the case.

## II. NO. 82–5423: JANSS' PRE–INJUNCTION ACTIVITY

Janss' conduct prior to the entry of the permanent injunction presents three issues: (1) whether the district court clearly erred in finding that Janss' technical service and other activities as a Cardiac Systems representative violated the covenant not to compete; (2) whether a covenant not to compete which prohibits activity not involving the active solicitation of sales is unreasonably broad under Minnesota law; and (3) whether a covenant which prohibits activity not involving the possession and use of confidential information is unreasonably broad. Before we can reach these questions, however, we must dispose of Medtronic's assertion that the appeal is moot.

■ In its motion to dismiss, Medtronic cites three cases acknowledging "the traditional rule that issues raised by an expired injunction are not moot if one party was required to post an injunction bond." *Camenisch v. University of Texas*, 616 F.2d 127, 131 (5th Cir.1980), *vacated*, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *see Liner v. Jafco, Inc.*, 375 U.S. 301, 305, 84 S.Ct. 391, 394, 11 L.Ed.2d 347 (1964); *cf. Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1266 (5th Cir.1978) (appeal bond). By implication, Medtronic argues that because no party was required to post an injunction bond, the issues raised by the expired injunction are moot. Medtronic's factual premise and its reasoning, however, are faulty. First, it appears that Medtronic posted a bond in connection with the temporary restraining order entered by the district court on September 4, 1981. In the context of mootness, a bond given as a condition of granting a temporary restraining order is essentially the same as other injunction bonds. Like a preliminary injunction bond, a temporary restraining order bond serves as "security ... for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed.R.Civ.P. 65(c). To the extent that our disposition of the issues raised by the expired injunction may dic-

tate the proper treatment of the temporary restraining order bond, this bond prevents mootness.

■ Second, Medtronic's reasoning is fallacious inasmuch as the question is not whether a particular source of controversy, *i.e.,* an injunction bond, exists, but whether any source of controversy exists. Even in the absence of an injunction bond, the pendency of Medtronic's damage claims below would preclude a finding of mootness. In this regard, we are persuaded by *Hedberg v. State Farm Mutual Automobile Insurance Co.,* 350 F.2d 924 (8th Cir.1965). *Hedberg* involved a suit seeking an injunction and damages for breach of covenants not to compete. The trial court granted a preliminary injunction which expired by its terms during the pendency of the damage claims. Viewing the action as a live controversy, then Judge Blackmun stated:

> We note here (a) that the plaintiffs' complaint embraced a request not only for injunctive relief but for damages as well and thus the latter issue is not the subject of a separate and distinct law suit ... (b) that the controversy concerns not the validity of the injunction per se but, rather, the validity of the restrictive agreement as to which the injunction issued; the latter is by no means moot for the issue of damages flows directly from it and, indeed, it is dependent upon it; (c) that it would be a waste of time and seemingly futile to dismiss this appeal as moot now only to have the very same issues brought to us once again after damages have been determined; and (d) that review of short-term restrictive covenants ought not to be so easily thwarted....

*Id.* at 933 (citation omitted). For these reasons, we conclude that the issues relating to Janss' pre-injunction activity are not moot.

**A. Correctness of Finding that Pre-Injunction Activity Violated Covenant Not to Compete**

The district court's finding that Janss violated the covenant not to compete is one of fact and thus is binding on this court unless clearly erroneous. Fed.R.Civ.P. 52(a). For purposes of review, this finding may be divided into two parts: the district court's interpretation of the covenant and its application of the covenant, as so interpreted, to the particular circumstances of the case. We conclude that in neither respect did the district court clearly err in determining that Janss' conduct failed to comport with his contractual obligations.

■ The meaning of "attempt to divert," the operative phrase of the non-competition agreement, is crucial. The district court found that the covenant prohibits not only the active solicitation of sales, but also any other effort to direct former Medtronic customers to a competitor. Rejecting the active solicitation requirement urged by Janss, the court stated:

> As for the term "attempts to divert," in this case, the court concludes that the special relationship between the physician and Medtronic pacemaker representative and, in particular, the reliance of the implanting physician on the skill and technical expertise of the attending representative justifies a broader prohibition against contacts with former customers. *This is undoubtedly what was intended by the employment agreement.*

Based on the language of the agreement and the nature of pacemaker marketing, we conclude that the district court's reading of the contract is by no means clearly erroneous. In so concluding, we note that another district court, confronted with the identical provision, found that "neither subtle nor explicit attempts to divert business are permitted under the agreement." *Medtronic, Inc. v. Benda,* Nos. 81–C–5029, 81–C–5030 and 81–C–5051 (N.D.Ill.), *aff'd,* 689 F.2d 645 (7th Cir.1982).

■ Reviewing the district court's application of the covenant to Janss' conduct, we find considerable evidence of efforts on Janss' part to reroute his former customers' business to his new employer. In addition to his service activities, Janss took several steps which may fairly be characterized as intended to draw former custom-

ers to Cardiac Systems. Upon leaving Medtronic, Janss, accompanied by Cardiac Systems' president and local sales representative, visited over thirty previous buyers and distributed a business card identifying him only as a "representative," not a "technical service representative," of Medtronic's competitor. He also delivered pacemaker equipment for Cardiac Systems to former customers on a purportedly emergency basis and entertained former customers at lunch and dinner. Equally important are Janss' service activities. In view of the close relationship that he developed with the prescribing physicians as a Medtronic sales representative, especially their reliance on him for technical expertise, the district court might reasonably have concluded that his assistance during operations and afterwards had the purpose and effect of luring his former customers to Cardiac Systems. Although the decision to purchase a particular pacemaker is made prior to implantation, services rendered during and after implantation may be viewed as promoting future sales. For these reasons, we conclude that the findings of fact at issue are not clearly erroneous.

## B. *Enforceability of Covenant Not to Compete with Respect to Activity Not Involving Active Solicitation of Sales*

■ Janss asserts that under Minnesota law, a covenant not to compete which prohibits conduct short of active sales solicitation is unreasonably broad. The standard governing the enforceability of non-competition agreements under Minnesota law was established in *Bennett v. Storz Broadcasting Co.*, 270 Minn. 525, 134 N.W.2d 892 (1965):

The test applied is whether or not the restraint is necessary for the protection of the business or good will of the employer, and if so, whether the stipulation has imposed upon the employee any greater restraint than is reasonably necessary to protect the employer's business, regard being had to the nature and character of the employment, the time for which the restriction is imposed, and the territorial extent of the locality to which the prohibition extends.

*Id.* at 899 (footnote omitted). In reference to the nature and character of the business, the district court observed:

The direct sales marketing structure of Medtronic, the close personal relationship between sales representatives and their physician customers, the knowledge acquired through this relationship of buying habits and needs of physicians, the extensive investment by Medtronic in developing a qualified sales force of which Mr. Janss was a part, are primary characteristics of Janss employment.

In reference to the time and territorial limitations, the court noted:

The agreement is limited in duration to 360 days and prohibits only contacts with former customers with whom Janss had contact during his last year of employment with Medtronic. Janss territory was geographically limited to a six (6) county area in Central Florida surrounding Tampa Bay. This limited restriction is amply justified by the interests of Medtronic in preserving its hardwon customer relationships, business and goodwill in the area.

Dismissing Janss' contention that Minnesota law restricts enforcement of non-competition agreements to active sales solicitation, the court ruled that the unique aspects of pacemaker marketing "justif[y] a broader prohibition against contacts with former customers." We agree. Because the restrictions required to protect Medtronic's business include the prohibition of subtle attempts to divert as well as overt sales efforts, we conclude that the covenant not to compete in question was not unreasonably broad.

Janss cites no authority mandating the active solicitation of sales. Instead he relies heavily on *Davies & Davies Agency Inc. v. Davies*, 298 N.W.2d 127 (Minn.1980), in which the court stated:

It appears that the agency's actual need for protection is limited to prohibiting its former employees from actively soliciting

business from agency customers. A broader restriction than this could not enhance the agency's business....

*Id.* at 131. *Davies,* however, is distinguishable in that the nature and character of the business there—insurance sales—differs drastically from the marketing of pacemaker equipment. Moreover, unlike in *Davies,* the covenant not to compete in this case does not prohibit all competitive employment for five years; rather, it limits the employee's contacts with former customers for a one-year period.

### C. *Enforceability of Covenant Not to Compete with Respect to Activity Not Involving Confidential Information*

■ Janss contends that under Minnesota law, the covenant not to compete is enforceable only if subsequent to the termination of his employment with Medtronic, he possessed and used confidential information obtained from Medtronic. Janss cites several cases in which courts, applying Minnesota law, either emphasized the absence of confidential information in refusing to enforce covenants not to compete, *see Jim W. Miller Construction, Inc. v. Schaefer,* 298 N.W.2d 455 (Minn.1980); *Eutectic Welding Alloys Corp. v. West,* 281 Minn. 13, 160 N.W.2d 566 (1968), or emphasized the presence of confidential information in enforcing covenants not to compete, *see Modern Controls, Inc. v. Andreadakis,* 578 F.2d 1264 (8th Cir.1978); *Minnesota Mining and Manufacturing Co. v. Kirkevold,* 87 F.R.D. 324 (D.Minn.1980). From these cases, Janss argues that "confidential information is a requisite element to the enforcement of a covenant not to compete." These cases, however, support only the proposition that under certain circumstances a covenant not to compete will be unenforceable absent the use of confidential information.

Minnesota case law does not establish a per se rule requiring the involvement of confidential information. Medtronic cites a number of cases in which Minnesota courts have enforced non-competition agreements without mentioning the protection of confidential information. *See Thermorama,*

*Inc. v. Buckwold,* 267 Minn. 551, 125 N.W.2d 844 (1964); *Andrews v. Cosgriff,* 175 Minn. 431, 221 N.W. 642 (1928); *Granger v. Craven,* 159 Minn. 296, 199 N.W. 10 (1924). In *Roth v. Gamble-Skogmo, Inc.,* 532 F.Supp. 1029 (D.Minn.1982), the court observed:

> Generally, Minnesota courts look with disfavor on restrictive covenants in employment contracts because they operate as a restraint of trade. They are to be carefully scrutinized, but are enforceable if they are reasonable in time and geographic area and if they protect a legitimate interest of the employer.... There are two types of legitimate interests of an employer that a restrictive covenant may properly protect. The first interest is trade secrets or confidential information, and the second interest is the employer's goodwill.

*Id.* at 1031 (citations omitted). Through his contacts with former customers, Janss plainly tried to trade on Medtronic's goodwill. Thus his conduct threatened, and the covenant not to compete sought to protect, one of "the legitimate interests ... that a restrictive covenant may properly protect." Inasmuch as they deal with the other legitimate interest, *i.e.,* trade secrets or confidential information, the cases cited by Janss are inapposite.

Under the test articulated in *Bennett,* the crucial question is whether the restraint at issue is necessary for the protection of Medtronic's business or goodwill. Given the special relationship between a sales/technical service representative and the prescribing physicians, we conclude that the covenant not to compete in this case—though applicable regardless of confidential information—is not unreasonably broad.

### III. NO. 82–5685: JANSS' POST–INJUNCTION ACTIVITY

■ Janss' proposed employment under the injunction raises a number of possible issues, including: (1) whether the district court clearly erred in finding that Janss' working for Southern Surgical inside the restricted territory while working for Car-

diac Systems outside the restricted territory would violate the covenant not to compete and thus the injunction; (2) whether a covenant not to compete which prohibits activity involving only the opportunity to divert business, as opposed to actual efforts to divert business, would be unreasonably broad under Minnesota law; (3) if so, whether the district court's order may be read as finding that Janss' arrangement with Southern Surgical would constitute not only an opportunity to divert, but also an effort to divert; and (4) if so, whether that finding is clearly erroneous. We need not address these questions, for we conclude that they are moot.

When the injunction expired in February 1983, Janss' employment opportunities were no longer limited by agreement or court order. He has since been free to sell surgical staples for Southern Surgical wherever he pleases notwithstanding his continued association with Cardiac Systems; indeed, he can sell pacemakers for Cardiac Systems to his former Medtronic customers if he pleases. Consequently, our review of the district court's factual findings and our application of Minnesota law with regard to Janss' arrangement with Southern Surgical would have no bearing on the prospective behavior of the parties. Moreover, insofar as Janss' post-injunction activity, unlike his pre-injunction activity, is wholly unrelated to Medtronic's damage claims and the temporary restraining order bond, it appears that no other source of controversy exists. "The case has therefore lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law." *Hall v. Beals*, 396 U.S. 45, 48, 90 S.Ct. 200, 201, 24 L.Ed.2d 214 (1969). Accordingly, Janss' appeal from the district court's order of May 12, 1982, on Janss' motion for construction of permanent injunction, must be dismissed as moot.

For the foregoing reasons, the district court's order of March 4, 1982, appealed in No. 82–5423, is AFFIRMED. No. 82–5685, appealing the district court's order of May 12, 1982, is DISMISSED.