**Harold W. PROW, Appellant,**

v.

**MEDTRONIC, INC., Appellee.**

**No. 84–1966.**

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1985.

Decided Aug. 12, 1985.

Rehearing Denied Oct. 1, 1985.

118

William McCurdy, St. Louis, Mo., for appellant.

Walter Clark, St. Louis, Mo., for appellee.

Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge, and NICHOL,* Senior District Judge.

* The HONORABLE FRED J. NICHOL, Senior United States District Judge for the District of South Dakota, sitting by designation.

NICHOL, Senior District Judge.

This is an action seeking declaratory relief to prevent an employer, Medtronic, Inc. (Medtronic), from enforcing a post-employment restrictive covenant against a former employee, Harold W. Prow (Prow), and for damages. Following a four-day bench trial, the district court [1] found the covenant to be enforceable, and denied Prow damages. Prow appeals, alleging that the covenant is unenforceable under the unique facts of this case, that Medtronic breached their employment agreement, excusing Prow from any obligation to comply with the restrictive covenant, that the doctrine of unclean hands bars enforcement of the covenant, and that Medtronic's failure to comply with discovery orders prejudiced his case. We affirm the judgment of the district court.

## FACTS

Medtronic is a Minnesota corporation which manufactures and sells artificial heart pacemakers to hospitals and physicians. With annual sales of approximately $400,000,000, Medtronic is the largest manufacturer of pacemakers in the country.

Prior to his employment with Medtronic, Prow was employed as a sales representative by Parke-Davis & Company. He sold surgical supplies, but not pacemakers, in a sales territory which included the St. Louis, Missouri, area. In 1974, Medtronic hired Prow to sell pacemakers in Missouri, primarily to take advantage of his contacts in metropolitan St. Louis. Medtronic provided Prow with extensive training in the sales of pacemakers.

Prow signed an employment agreement when he was hired by Medtronic in 1974. In 1977, Medtronic introduced a revised compensation plan, and required that all sales representatives, including Prow, sign new employment agreements reflecting the terms of the revised plan. The 1977 agreement contained the restrictive covenant which is the subject of this lawsuit. The covenant states:

5. *Competitive Employment*

(b) For 360 days after termination of my employment with the [Medtronic] Company, I will not attempt to divert any company business by soliciting, contacting, or communicating with any customers for the Company's products with whom I, or employees under my supervision, had contact with during the year preceding termination of my employment.

In 1982, Medtronic implemented a nationwide plan to add more sales representatives, while at the same time reducing certain sales territories. As a result of the territory reduction in the St. Louis area, Prow lost a number of large hospital customers. In exchange for the lost sales commissions which Prow and others might incur as a result of the territory reductions, Medtronic formulated a special three-year compensation arrangement. In Prow's case, it was assumed that Prow would lose $1,000,000 in sales on which he normally received a 3% commission, or $30,000. Medtronic therefore offered to pay him $30,000 in the first year of the territory reduction to compensate him for his anticipated loss of commissions. The $30,000 payment was to be in addition to both his $37,000 salary, and the commissions he would realize on his remaining territory, which he acknowledged could be expected to total about $60,000. His aggregate compensation in 1982, therefore, was anticipated to be no less than $127,000. [2] An additional $30,000 in special compensation for lost commissions would be paid Prow over the second and third years of the territory reduction plan.

In late 1982, Medtronic reduced the commission percentage of all sales representatives from 3% to 2.85%, a 5% reduction in

---

**1.** The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

**2.** In 1981, Prow's salary, commissions and bonuses totaled over $142,000, exclusive of a generous list of benefits such as expense accounts, insurance policies, club memberships, vacation trips, stock options and retirement plans.

commissions. At the same time, pacemaker prices were increased by 5%. The result was that dollar commissions per unit sold remained the same.

Some time prior to November 29, 1982, while still employed by Medtronic, Prow began negotiating an employment agreement with Physiotech, Inc. (Physiotech), a distributor for Pacesetter Systems, Inc. (Pacesetter). Pacesetter is a direct competitor of Medtronic in the pacemaker business. Prow did not advise Medtronic of these negotiations, but admits giving a copy of his confidential Medtronic employment agreement to a representative of Physiotech or Pacesetter.

On November 29, 1982, following an unsuccessful attempt by Prow to have Medtronic restore the accounts he lost in the territory reduction, Prow resigned his position with Medtronic. The same day, he filed the seven-page complaint in this case.

Prow became a sales representative for Physiotech, selling pacemakers in the St. Louis area. His employment agreement with Physiotech provided that Prow would receive total commissions of $90,000 in the twelve months following December 1, 1982. Prow agreed not to contravene the restrictive covenant contained in his agreement with Medtronic, and Physiotech agreed to pay all Prow's legal fees or expenses incurred in this lawsuit.

## I. ENFORCEABILITY

### A. *Generally*

There is no question that the restrictive covenant in question here is enforceable on its face. This Court has previously reviewed the covenant and upheld its validity under Minnesota law in *Medtronic, Inc. v. Gibbons*, 684 F.2d 565 (8th Cir.1982). Two other circuit courts of appeals have also found the same covenant enforceable. *Medtronic, Inc. v. Benda*, 689 F.2d 645 (7th Cir.1982), *cert. denied* 459 U.S. 1106, 103 S.Ct. 731, 74 L.Ed.2d 955 (1983) (applying Illinois law); *Medtronic, Inc. v. Janss*, 729 F.2d 1395 (11th Cir.1984) (applying

Minnesota law). Prow argues here, however, that even if the covenant is valid on its face under Minnesota law,[3] the particular facts of this case render it unenforceable. The district court applied the proper test according to Minnesota law: restrictive covenants are to be strictly construed, but will be enforced to the extent that they protect a legitimate interest of the employer. *Gibbons*, 684 F.2d at 568. The covenant must also be reasonable under all the circumstances. *Cherne Industrial v. Grounds & Associates*, 278 N.W.2d 81, 88 n. 2 (Minn.1979). The test of reasonableness is

> whether or not the restraint is necessary for the protection of the business or goodwill of the employer, and if so, whether the stipulation has imposed upon the employee any greater restraint than is reasonably necessary to protect the employer's business, regard being had to the nature and character of the employment, the time for which the restriction is imposed, and the territorial extent of the locality to which the prohibition extends.

*Bennett v. Storz Broadcasting Co.*, 270 Minn. 525, 134 N.W.2d 892, 899 (1965).

■ This Court determined in *Gibbons* that the Medtronic restrictive covenant protected a legitimate business interest, *i.e.*, the goodwill created among Medtronic, its sales representatives, and its customers. Prow asserts, however, that Medtronic obtained the customer goodwill sought to be protected by illegal conduct, and it is therefore not a legitimate business interest. The illegal conduct alleged by Prow involves Medtronic's policy of providing some customers with free equipment. Although Medtronic readily acknowledges this policy and holds it out as a legitimate business practice, standard within the industry, Prow argues that it violates 42 U.S.C. section 1395nn(b), which prohibits kickbacks to any provider of Medicare services.

We agree with the trial court, however, that Medtronic's interest in protecting busi-

---

**3.** The parties agree that this case is controlled by the substantive contract law of Minnesota.

ness goodwill is legitimate under the facts presented in this case. The allegations of illegal conduct were never pleaded, and in any event, are unsupported by the evidence. Although Prow claims that Medtronic is the subject of a federal investigation, there was no evidence that Medtronic has ever been indicted, charged or convicted of violating 42 U.S.C. section 1395nn(b) or any similar federal statute. For these reasons, we find no error in the trial court's conclusion.

As to the reasonableness of the covenant, it is reasonably limited in scope. The restriction lasts for only 360 days following termination and does not proscribe contact with prospective customers other than those with which Prow had contact during his last year of employment. The covenant does not restrict Prow to any greater extent than is necessary to protect Medtronic's business for 360 days.

Prow also argues that the purpose of the restrictive covenant is to prevent Medtronic employees from leaving, while at the same time reducing their compensation. We have reviewed the evidence said to support this claim, however, and we find nothing to dissuade us from our conclusion in *Gibbons*, shared by the Seventh and Eleventh Circuits in *Benda* and *Janss*, respectively, that the purpose of the covenant is to protect a legitimate business interest of the employer, Medtronic.

### B. *Breach of Contract*

Next Prow contends that Medtronic materially breached the "compensation obligations" of the employment contract, thereby relieving Prow of any obligation he might have had to comply with the restrictive covenant. The district court found no such breach.

As evidence of Medtronic's purported breach of contract, Prow points to the fact that his sales territory was reduced in 1982, allegedly to allow Medtronic the opportunity to assign some of Prow's accounts to lower-paid sales representatives, while at the same time reducing Prow's income. As we have noted above, however,

the special plan implemented to compensate Prow and others for lost commissions would have protected him against a substantial loss of income. Furthermore, the trial court made a factual finding that Medtronic's purpose in reducing certain sales territories was to reduce employee "burn out," increase market penetration, and encourage employees to stay with the company. We must review findings of fact in light of the "clearly erroneous" standard, *Anderson v. City of Bessemer City*, —— U.S. ——, ——, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985), and within that very narrow standard of review we find no error here.

Prow argues further that Medtronic breached the agreement by unilaterally reducing his commissions from 3% to 2.85%, thereby reducing his compensation. Medtronic showed, however, that a concurrent increase in product prices offset the reduction in commissions, resulting in the dollar amount of commissions per pacemaker sold remaining the same. While commission sales representatives may come to expect a price increase to result in a corresponding increase in dollar commissions, and although Medtronic's actions may have frustrated those expectations, the commission/price adjustment did not constitute a breach of contract.

### C. *Unclean Hands*

Prow's argument that Medtronic's actions were inequitable, and that the doctrine of unclean hands therefore bars enforcement of the covenant, must be considered in light of well-settled equitable principles. The conduct of Medtronic said to constitute unclean hands is the same conduct which Prow argues constitutes breach of contract, and which we have discussed above. The district court found that even assuming *arguendo* Medtronic's actions were inequitable, such misconduct must bear some relation to the merits of the case, *see Mitchell Brothers Film Group v. Cinema Adult Theater*, 604 F.2d 852, 863–65 (5th Cir.1979), *cert. denied*, 445 U.S. 917, 100 S.Ct. 1277, 63 L.Ed.2d 601

(1980), and that no such relationship was established here. We agree.

We may also look to Prow's conduct to determine whether he who seeks equity has done equity. *See Koster v. Lumbermens Mutual Co.,* 330 U.S. 518, 522, 67 S.Ct. 828, 830, 91 L.Ed. 1067 (1947); *U.S. v. Wilson,* 707 F.2d 304, 311–12 (8th Cir.1982). The instant case is not one where an employer, for less than noble reasons, fires an employee, secure in the knowledge that a post-employment restrictive covenant prohibits the employee from pursuing his or her chosen vocation. Here Prow was negotiating with a direct competitor of Medtronic while still employed by Medtronic. He gave a copy of his confidential Medtronic employment agreement to the competitor. While still on Medtronic's payroll, he directed his attorney to prepare the complaint in this lawsuit, and bargained with Physiotech to pay all his legal expenses. Then, when the negotiations with Pacesetter and Physiotech were finalized, his new job was assured, and this lawsuit was ready to file, he resigned from Medtronic. We conclude that although Prow comes before this Court seeking equity, he has not done equity.

D. *Summary*

We therefore find that the restrictive covenant held valid in *Gibbons, Benda* and *Janss* is not rendered unenforceable by the particular facts of this case. Furthermore, we have carefully examined Prow's claim that Medtronic breached its contractual obligation of good faith and fair dealing, and find the claim to be without merit.[4]

## II. DISCOVERY

Prow argues alternatively that but for Medtronic's failure to comply with orders of the lower court compelling discovery, he would have been able to prove the restrictive covenant did not protect a legitimate business interest. Medtronic responds that it was subjected to unreasonable and burdensome discovery, and that if Prow was

prejudiced, it was because of delay for which Prow's counsel was responsible.

On September 30, 1983, the United States Magistrate to whom pretrial matters had been referred granted Prow's motion to compel production of certain documents by October 12, 1983, in St. Louis. On October 19, having missed the production deadline by seven days, Medtronic moved the district court for termination of discovery, except that Medtronic would produce the pertinent documents at its home office (in Minneapolis), at Prow's request, rather than in St. Louis. The district court, after considering all the circumstances, granted the motion.

Prow's counsel did not request a review of the documents in Minneapolis until October 24, two days before trial. Medtronic then refused the request. Prow moved for sanctions, which the district court denied. No continuance was requested, and the trial commenced October 26, 1983.

■ Our scope of review regarding discovery matters is very narrow. We have stated that we are unlikely to fault the district court's judgment on discovery matters absent a "gross abuse of discretion resulting in fundamental unfairness in the trial of the case." *Phil Crowley Steel Corp. v. Macomber, Inc.,* 601 F.2d 342, 344 (8th Cir.1979), *quoting Voegeli v. Lewis,* 568 F.2d 89, 96 (8th Cir.1977). In the instant case, the district court considered the fact that Prow failed to request any review of the documents between October 19, the date the order to compel was granted, and October 24, two days before trial; moreover, Prow had announced he was ready for trial *prior* to requesting a review of the documents. No continuance was sought, a circumstance which this Court also felt was an important factor in *Phil Crowley Steel Corp.,* 601 F.2d at 345.

■ While we do not condone Medtronic's failure to meet a discovery deadline, and we caution that such a failure may, under certain circumstances, be grounds

---

**4.** Because we find the covenant enforceable, and because we find no breach of contract, we need not reach any of the damages issues in the case.

for the imposition of sanctions, the trial court has broad discretion in making discovery rulings, and we do not find the requisite "gross abuse" of that discretion here.

Accordingly, for the reasons set forth above, the judgment of the district court is affirmed.