Thomas Dean SMITH, on behalf of himself and all others similarly situated, Appellee/Cross–Appellant,

v.

WORLD INSURANCE COMPANY, Appellant/Cross–Appellee.

Nos. 93–1558, 93–1559.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1993.

Decided Oct. 17, 1994.

Order Granting Motion for Clarification Nov. 21, 1994 in No. 93–1558.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 22, 1994 in No. 93–1558.

John H. Cotton, Phoenix, AZ, argued (Paula M. DeMore, on the brief), for appellant.

Edward D. Hotz, Omaha, NE, argued, for appellee.

Before LOKEN, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

HANSEN, Circuit Judge.

World Insurance Company (World) appeals the district court's order denying World's motion for new trial or judgment as

a matter of law filed after the district court entered judgment and awarded damages to Thomas Dean Smith on a jury verdict finding that World constructively discharged him in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634. World also appeals the district court's order awarding Smith front pay. World argues that it is entitled to a new trial or judgment as a matter of law because (1) there was insufficient evidence on which to submit Smith's claim of constructive discharge to the jury; (2) Smith's election to take early retirement equitably estops Smith from claiming constructive discharge; (3) the jury was allowed to award backpay for the time period after Smith rejected World's offer of reinstatement; and (4) the jury failed to deduct from the backpay award various benefits Smith received as part of his early retirement agreement. World also argues that the district court erred by awarding Smith front pay after he rejected World's offer of reinstatement. Smith cross-appeals arguing that the district court erred by failing to include prejudgment interest on the damage awards. We affirm in part, reverse in part, and remand.

## I.

World hired Smith as a stock clerk in 1950, when Smith was 19 years old. Smith worked his way up in the company for the next 35 years. In 1976, World promoted him to Assistant Vice–President of Home Office Services, where his duties included product purchasing, supervision of mail room, filing, and warehousing, and printing all of World's policies, contracts, advertising brochures, and newsletters. In 1986, World promoted him to Assistant Vice–President for Purchasing.

In 1985, World hired a management consulting group to analyze the strengths and weaknesses of World's operations. After the consulting group finished its review, it recommended some changes in the management structure at World. After receiving those recommendations, World hired Alan Jackson as a new vice-president to oversee many areas of World's operations, including many of the areas under Smith's supervision. Smith began reporting to Jackson on July 7, 1986. Prior to July 7, 1986, Smith had reported to World's president, Tom Eilers.

Smith reported to Jackson for approximately one month during which Jackson and Smith met a few times. Jackson admitted to another employee during that time that he was building a record against Smith and other older employees in order to get rid of them. On August 8, 1986, Jackson told Smith that he had the option of staying with World and risking termination or taking early retirement. Jackson gave Smith the weekend to decide. On Monday, August 8, 1986, Smith informed World that he would take early retirement.

On August 18, 1986, Smith signed a memorandum agreement with Tom Eilers, on behalf of World, setting out the details of the early retirement package. Smith agreed to retire voluntarily on November 1, 1986. World agreed, among other things, to pay Smith a bonus based on six-weeks of his annual salary, to provide health insurance to Smith and his dependents for six weeks, to provide Smith group life insurance for a year, to provide Smith with the services of an employment agency to help him locate work, and to provide Smith with office space and telephone service until December 15, 1986. Smith was 54 years old when he agreed to early retirement. The person that filled his position was in her mid–30's. Smith found another job in the purchasing department of Mutual of Omaha and began work on December 16, 1986. Smith's new salary was approximately $11,000 a year less than he was making at World.

On the day Smith left World, he filed a complaint with the Nebraska Equal Opportunity Employment Commission. On August 11, 1987, Smith filed a complaint against World in the United States District Court for the District of Nebraska alleging that World had violated the ADEA by constructively discharging him by forcing him to take early retirement because of his age. On June 16, 1989, World offered to reinstate Smith to his former position of Vice President of Purchasing. On July 6, 1989, Smith rejected World's offer of reinstatement.

Smith's case against World went to trial on November 4, 1991. On November 13, 1991, the jury returned a verdict for Smith finding that World constructively discharged Smith because of his age. The jury assessed $67,321 of backpay damages and found that World's conduct constituted a willful violation of the ADEA. On the same day, the district court held a hearing on the issue of front pay and other damages. On October 16, 1992, the district court entered judgment on the jury verdict and awarded Smith $134,642 in backpay and liquidated damages (which doubles the backpay award), $124,954.40 in front pay, $113,628.75 in attorney's fees, and $4,194.87 in expenses.

Smith filed a motion seeking an amended judgment to include prejudgment interest on the damage awards. World filed a motion for judgment as a matter of law[1] or a new trial alleging a variety of errors in the trial and the computation of the damage awards. The district court denied both motions. World appeals and Smith cross-appeals.

## II.

World first argues that the district court erred in denying World's motion for judgment as a matter of law, or alternatively, for a new trial. We have applied the following standard of review to the district court's denial of such motions:

> We review the district court's denial of a motion for judgment as a matter of law de novo using the same standards as the district court. *Amerinet, Inc. v. Xerox Corp.,* 972 F.2d 1483, 1505 (8th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993). A motion for judgment as a matter of law presents a legal question to the district court and this court on review: "whether there is sufficient evidence to support a jury verdict." *White v. Pence,* 961 F.2d 776, 779 (8th Cir.1992). We view the "evidence in the light most favorable to the prevailing party and must not engage in a weighing or evaluation of

the evidence or consider questions of credibility." *Id.* Judgment as a matter of law is appropriate only when all of the evidence points one way and is "susceptible of no reasonable inference sustaining the position of the nonmoving party." *Id.*

> We apply a much more deferential standard in our review of a district court's denial of a motion for a new trial under Fed.R.Civ.P. 59(a). "The [district] court's decision will not be reversed by a court of appeals in the absence of a clear abuse of discretion." *Lowe v. E.I. DuPont de Nemours & Co.,* 802 F.2d 310, 310–11 (8th Cir.1986) (citations omitted) ... The key question is whether a new trial should have been granted to avoid a miscarriage of justice. *See Beckman v. Mayo Found.,* 804 F.2d 435, 439 (8th Cir.1986) ("The district court can only disturb a jury verdict to prevent a miscarriage of justice.").

*Keenan v. Computer Assoc. Int'l, Inc.,* 13 F.3d 1266, 1268–69 (8th Cir.1994) (footnotes omitted). World asserts that it is entitled to judgment as a matter of law or a new trial on issues of both liability and damages.

### A.

World first argues that it is entitled to judgment as a matter of law or a new trial because there was insufficient evidence for the district court to submit to the jury Smith's claim that he was constructively discharged because of his age. We disagree.

" 'A constructive discharge exists when an employer deliberately renders the employee's working conditions intolerable and thus forces him to quit his job.' " *Smith v. Goodyear Tire & Rubber Co.,* 895 F.2d 467, 472 (8th Cir.1991) (quoting *Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1256 (8th Cir.1981)) (other source omitted). To make out a case of constructive discharge, a plaintiff must show that " 'a reasonable person would find the conditions intolerable.' " *Id.* (quoting *Bunny Bread,* 646 F.2d at 1256).

---

1. World called its motion a motion for judgment notwithstanding the verdict, but we will treat it as a motion for judgment as a matter of law because a motion for judgment as a matter of law now encompasses all motions denominated as motions for a directed verdict or for judgment notwithstanding the verdict. Fed.R.Civ.P. 50 (commentary). Hence, we will apply our cases discussing the standards for reviewing and analyzing motions for a directed verdict or judgment notwithstanding the verdict in analyzing this motion for judgment as a matter of law.

The plaintiff must also show that the employer created the intolerable conditions intending to force the plaintiff to quit. *Id.* The plaintiff can satisfy the intent requirement by demonstrating that he or she quit as "a reasonably foreseeable consequence of [the] employer['s] discriminatory actions." *Hukkanen v. International Union of Operating Eng'r,* 3 F.3d 281, 285 (8th Cir.1993).

■ The mere offer of early retirement, however, does not establish a constructive discharge. *See, e.g., James v. Sears Roebuck & Co.,* 21 F.3d 989, 993 (10th Cir.1994); *Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 480 (1st Cir.1993); *Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1081 (3d Cir.1992); *Wilson v. Firestone Tire & Rubber Co.,* 932 F.2d 510, 514 (6th Cir.1991). Early retirement can be a humane and beneficial way for many older employees to leave the workplace. *Coburn v. Pan Am. World Airways, Inc.,* 711 F.2d 339, 344 (D.C.Cir.), *cert. denied,* 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983); *see also Henn v. National Geographic Soc'y,* 819 F.2d 824, 826 (7th Cir.), *cert. denied,* 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987) (offer of early retirement can be a boon for older workers). Accordingly, most courts have found that an offer of early retirement constitutes a constructive discharge only when the offer is made under terms and conditions where the employee would be worse off whether or not he or she accepted the offer. *See, e.g., James,* 21 F.3d at 993 (quoting *Mitchell v. Mobil Oil Corp.,* 896 F.2d 463, 467 (10th Cir.1990)); *Vega,* 3 F.3d at 480; *Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1214 (5th Cir.), *cert. denied,* ── U.S. ──, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992). More simply stated, an offer of early retirement constitutes a constructive discharge when the choice is essentially either early retirement or continuing to work under intolerable conditions, like the threat of termination without benefits. *James,* 21 F.3d at 993 (quoting *Mitchell,* 896 F.2d at 467) (constructive discharge established if "each choice facing the employee makes him worse off, and 'if he refuses the offer and decides to stay, his employer will treat him less favorably than other employees because of his age'"); *Vega,* 3 F.3d at 480 (constructive discharge when offer of early retirement all-or-nothing choice between early retirement with benefits or discharge without benefits); *Gray,* 957 F.2d at 1082 (quoting *Henn,* 819 F.2d at 830) (issue is whether a jury could infer the plaintiff would have been fired if she turned down an offer of early retirement).

■ The evidence in this case satisfies these standards. Smith testified that in the August 6, 1986, meeting, Jackson offered him the choice essentially among immediately resigning, staying on, or taking early retirement. (Tr. at 406–07.) Smith testified that Jackson told him that if he elected to stay on that Jackson "would start to turn the screws and build a file" against Smith. (*Id.*) Jackson made clear to him that the only way benefits would be available is if he took early retirement. (Tr. at 408.) The meeting occurred on a Thursday, and Jackson gave him until the following Monday to think it over. (*Id.*) Smith left the meeting feeling that given Jackson's threats, no matter what happened he was going to be terminated. (Tr. at 410.) Smith concluded that Jackson's threats to build a file and turn the screws meant that Jackson would create situations to make Smith look bad and that Smith would be given projects on which he would not be able to succeed. (Tr. at 454.) He told his wife that after reviewing the options Jackson provided, he felt he had no choice other than retirement because it would be the only way to get some benefits out of the situation. (Tr. at 413.) Smith believed that in the meeting Jackson had outlined his goal of eventually seeing that Smith was dismissed and he really had no choice other than to take the benefits. (*Id.*)

This evidence, viewed in the light most favorable to Smith, is sufficient to demonstrate that the options Jackson outlined for Smith on August 6, 1986, which included an offer of early retirement, left Smith with the type of "Hobson's choice" that would allow a jury to consider the offer of early retirement a constructive discharge. In our review, we must presume that the jury believed Smith's testimony that Jackson threatened to "turn the screws" and "build a record" against Smith if he did not resign. We conclude that

this evidence, even if it stood alone, was sufficient to establish that a reasonable person would find that Smith's working conditions would have been intolerable had he chosen to remain at World.

In this case, however, Smith's testimony about the events leading to his early retirement does not stand alone. There is additional evidence which corroborates Smith's perception of those events. Mary Schmidt, a co-worker of both Smith and Jackson at World, largely corroborated Smith's testimony that Jackson intended to see that World would get rid of Smith one way or another. Schmidt testified that Jackson confided in her from the first week he started with World, (Tr. at 313), and told her he was being brought in as an "axman to get rid of several employees" and that he would leave World soon after he accomplished this task so the company would not be liable in lawsuits. (Tr. at 314.) Jackson told her he had a list of employees, including Smith, to get rid of and asked for Schmidt's assistance in building files against them. (*Id.*) Jackson also told her he wanted to build files against those employees on his list so that World could terminate them because they were older and were up for pensions and that by terminating them he could save the company big money. (Tr. at 316.) Jackson told her he was having trouble building a file against Smith and that he was going to give Smith additional tasks with very limited timelines that Jackson knew Smith could not complete fairly. (Tr. at 316–17.) Jackson talked to her almost daily about cost-cutting measures and focussed his attention on removing people who had been with the company a long time, were making a good salary, and were up for a pension and replacing them with younger employees. (Tr. 320–21.) He repeatedly emphasized age, salary, and pension. (Tr. at 320.)

We conclude that there was more than sufficient evidence to support submission of Smith's constructive discharge claim to the jury. Drawing all inferences in favor of Smith, the evidence establishes that the offer of early retirement left Smith with two undesirable choices: retire early or face intoler-

able conditions if he chose to stay. The district court committed no error in denying the motion for new trial or judgment as a matter of law on this issue.

**B.**

■ World next argues that it was entitled to judgment as a matter of law or a new trial because the district court failed to instruct the jury on World's equitable estoppel defense. World argues that because Smith signed an agreement stating that he was voluntarily taking early retirement in exchange for certain retirement benefits from World, he is equitably estopped under Nebraska law from asserting that he was constructively discharged. We disagree.

■ We first note that the determination of equitable defenses and equitable remedies is a matter for the court to decide, not the jury. Accordingly, we will construe World's argument to be that the district court erred in failing to dismiss Smith's claim as equitably estopped.

The district court found that the doctrine of equitable estoppel did not apply in this case. The district court reasoned that accepting World's estoppel argument would mean that any time an employee took early retirement, equitable estoppel would bar a constructive discharge claim. (Tr. at 856–57.) The district court found that the estoppel issue is implicit in the constructive discharge inquiry and concluded that estoppel is not a valid defense in this case. (Tr. at 856.)

■ We agree with the district court. If equitable estoppel applied, the constructive discharge question would be moot in virtually every early retirement case. As the above text indicates, that is simply not the law. Moreover, the equitable estoppel analysis is subsumed in the constructive discharge analysis in this case. Before we can apply an equitable doctrine, we must determine "whether he who seeks equity has done equity." *Prow v. Medtronic, Inc.,* 770 F.2d 117, 122 (8th Cir.1985). This is part of the doctrine of "unclean hands." *Id.* at 121.[2]

2. Nebraska courts also apply these equitable

maxims that " '[h]e who seeks equity must do

Hence, whether World engaged in unlawful conduct that violated the ADEA is the critical question in both the constructive discharge and equitable estoppel inquiries. If Smith proved that World, using age as a motivating factor, constructively discharged him by causing him to retire involuntarily, then World violated the ADEA and would not have the "clean hands" necessary to assert equitable estoppel as a defense. On the other hand, if Smith had failed to prove World violated the ADEA by constructively discharging him, the equitable estoppel defense would have been available but would no longer have been necessary. Accordingly, we conclude, as did the district court, that World's equitable estoppel defense is redundant and unnecessary in this case because the constructive discharge analysis essentially encompasses the equitable estoppel analysis.[3]

### C.

World next argues that it is entitled to judgment as a matter of law or a new trial because the district court erred both in submitting the issue of backpay to the jury and in instructing the jury on how to determine any backpay award. World argues that its unconditional offer of reinstatement to Smith, which he rejected, should have precluded an award of any backpay after the date Smith rejected the offer and, therefore, the jury should not have been allowed to award backpay after that date. We agree with World's argument that the district court erred in its instructions submitting the backpay issue to the jury.

"Once unlawful discrimination has been found, back pay usually should be awarded in furtherance of the ADEA's goal to 'make whole' persons who suffer loss due to discrimination." *Coleman v. City of Omaha,* 714 F.2d 804, 808 (8th Cir.1983) (citing *Albermarle Paper Co. v. Moody,* 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975)). Here, however, World extended Smith an unconditional offer of reinstatement which Smith rejected. World argues that Smith's rejection of the offer ended his entitlement to backpay. We have stated the effect of an offer of reinstatement as follows:

> In *Ford Motor Company v. Equal Opportunity Commission,* 458 U.S. 219, 241, 102 S.Ct. 3057, 3070, 73 L.Ed.2d 721 (1982), the Supreme Court held that "absent special circumstances, the rejection of an employer's unconditional job offer ends the accrual of potential backpay liability." Thus, in general, the relevant period for measuring backpay liability is the time between the termination and the plaintiff's action upon an offer of reinstatement. *Fiedler v. Indianhead Truck Line Inc.,* 670 F.2d 806, 808 (8th Cir.1982). Nevertheless, if a plaintiff reasonably rejects an offer of reinstatement, then the offer does not terminate the accrual of backpay damages. *Id.*

*Morris v. American Nat'l Can Corp.,* 952 F.2d 200, 202 (8th Cir.1991). The "refusal of a reinstatement offer is measured by an objective standard: 'Generally, it is the duty of the trier of fact to weigh the evidence to determine whether a reasonable person

---

equity' " and that "a party seeking equitable relief must come into court with 'clean hands.' " *Marr v. Marr,* 245 Neb. 655, 515 N.W.2d 118, 120 (1994) (quoting *Voichoskie v. Voichoskie,* 215 Neb. 775, 340 N.W.2d 442, 443–44 (1983)); *see also Fritsch v. Hilton Land & Cattle Co.,* 245 Neb. 469, 513 N.W.2d 534, 544 (1994) ("Under the doctrine of unclean hands, a person who comes into a court of equity to obtain relief cannot do so if he or she has acted inequitably, unfairly, or dishonestly as to the controversy in issue"). Nebraska courts have specifically held "that equity, under the general maxim that one who seeks equity must come with clean hands, will refuse its aid to a litigant who violates a statute directly connected with the matter in litigation." *Ohler v. Ohler,* 220 Neb. 272, 369 N.W.2d 615, 618 (1985).

**3.** Our holding on the equitable estoppel claim comports with our decision in *Lee v. Rapid City Area Sch. Dist. No. 51–4,* 981 F.2d 316 (8th Cir.1992) (en banc) (incorporating the analysis of the prior panel opinion attached as an appendix). In *Lee,* the school district argued that Lee "waived, abandoned, or is estopped from asserting his age discrimination claim because he quit his job." *Id.* at 328 (internal quotations omitted). We responded that "[o]bviously, if Lee had quit his job freely and totally of his own volition, he could not claim that the School District discriminatorily fired him...." *Id.* We concluded, however, that Lee had made a case of constructive discharge. *Id.* at 328, 329.

would refuse the offer of reinstatement.'" *Id.* at 203 (quoting *Fiedler,* 670 F.2d at 808).

### 1.

■ World first argues that the district court erred in denying World's motion for a directed verdict on backpay. World argues that Smith failed to present any evidence of exceptional or special circumstances for rejecting the offer of reinstatement and, therefore, under the *Ford* case, the district court should have directed a verdict against Smith to the extent he claimed backpay beyond the date he rejected the offer of reinstatement. We disagree. We acknowledge that in *Ford* the Supreme Court explicitly stated that "absent special circumstances" the plaintiff's refusal of an unconditional offer of reinstatement stops the accrual of backpay. 458 U.S. at 241, 102 S.Ct. at 3070. However, as noted above, we have specifically stated that "if a plaintiff *reasonably rejects* an offer of reinstatement, then the offer does not terminate the accrual of backpay damages." *Morris,* 952 F.2d at 202 (quoting *Fiedler,* 670 F.2d at 808) (emphasis added). As such, our cases establish that a "reasonable rejection" is a special circumstance under *Ford.* Accordingly, we must reject this argument as being inconsistent with our case law.

### 2.

■ World argues that even if Smith needed to show only that his rejection of the offer of reinstatement was objectively reasonable, the district court erred in submitting the issue of backpay to the jury because there is no evidence in the record that Smith reasonably rejected the offer. Smith discussed his rejection of the offer at length during his testimony. Smith said that he rejected the reinstatement offer because he had no faith in the offer and was not comfortable with it. (Tr. at 480.) He felt there was nothing in the offer to prevent World from "turning the screws or doing whatever" to him if he returned. (*Id.*) He knew that he would make more money by returning to World, but he did not think it was worth the risk because he had no guarantees of how long he would be with World. (*Id.* at 486.) He also understood that references to poor performance would not be expunged from his record, and that he did not want to go back to World with those references on his record. (*Id.* at 484, 488.) He further asserted that he could not visualize how there would be a change on World's part and noted that Tom Eilers was still the president of World. (*Id.* at 485.) Smith also argues here on appeal that the timing of the offer, nearly three years after he left World, indicates World made the offer in bad faith.

Viewing the evidence in a light most favorable to Smith, we must assume the terms of the offer of reinstatement and the circumstances surrounding it are as Smith testified. We must determine on those circumstances whether a jury could find that "a reasonable person would refuse the offer of reinstatement." *Fiedler,* 670 F.2d at 808. We conclude that a jury could have found that Smith's rejection of the offer of reinstatement was reasonable. While many of the individual factors standing alone would not be sufficient to establish an objectively reasonable rejection of the offer, the totality of the circumstances would have allowed the jury to reach that conclusion.

### 3.

World next argues that the district court erred in instructing the jury on the effect of the offer of reinstatement on his claim for backpay. World argues that the district court failed even to mention the legal effect of an employer's offer of reinstatement and that the district court failed to shift the burden to plaintiff to prove the reasonableness of rejecting the offer of reinstatement.

■ We review the district court's instructions to the jury "as a whole to determine whether they fairly and adequately instruct the jury as to the substantive law." *Brown v. Stites Concrete, Inc.,* 994 F.2d 553, 559 (8th Cir.1993) (en banc). Here, the district court did not give any instruction on the legal effect of an offer of reinstatement or the reasonableness of Smith's rejection of that offer. Instead, the court gave only a modified version of our model mitigation instruction. *See* Instruction No. 5.12, Eighth Circuit Model Civil Jury Instructions (West 1993). The instruction read as follows:

You are also instructed that plaintiff has a duty under the law to "mitigate" his damages—that is, to exercise reasonable diligence under the circumstances to minimize his damages. Defendant has the burden of proof on this issue. Therefore, if you find that defendant has shown by the greater weight of the evidence that plaintiff failed to seek out or take advantage of an opportunity that was reasonably available to him, for example, reinstatement under reasonable terms, you must reduce his damages by the amount of the wages he reasonably would have earned if he had sought out or taken advantage of such an opportunity.

(Appellant's App. at 113.) The district court found that this instruction sufficiently instructed the jury on the effect of an offer of reinstatement, because in its view an offer of reinstatement simply presents one way for plaintiffs to mitigate damages.

We agree with World that the district court erred in failing specifically to address the legal effect of Smith's rejection of World's unconditional offer of reinstatement. The Supreme Court made clear in *Ford* that rejecting such an offer has particular and discrete legal significance; it generally stops the accrual of backpay. Similarly, our case law indicates that if the offer is rejected without an objectively reasonable explanation, it would end the accrual of backpay as a matter of law. *See Morris*, 952 F.2d at 202. World was entitled to a specific instruction on the effect of an offer of reinstatement and its rejection because the issue is critical in the case and World's position on the issue has support in the evidence. The general mitigation instruction given by the district court did not "fairly and adequately instruct the jury as to the substantive law," *Brown*, 994 F.2d at 559, because it did not tell the jury of the particular legal consequences of such an offer and its rejection. Accordingly, we reverse the award of backpay and remand for a new trial on that issue.

■ World also argues that the instruction should have shifted the burden to Smith to demonstrate that his rejection of the offer was reasonable. We disagree. We have consistently held that while the wrongfully discharged employee must take reasonable measures to mitigate damages, the defendant-employer bears the burden of proving that the employee failed to take those measures. *Muldrew v. Anheuser–Busch, Inc.*, 728 F.2d 989, 992 (8th Cir.1984); *see also Brown v. Stites Concrete, Inc.*, 994 F.2d 553, 565 (8th Cir.1993) (en banc) (defendant in ADEA case "bears the burden of proving a plaintiff's failure to mitigate"). We find no authority or reason for altering the burden in this case. Accordingly, we believe the burden is correctly placed upon the employer to prove that it made an offer of reinstatement and that the plaintiff's rejection of it was objectively unreasonable.

4.

■ World next argues that the district court erred in instructing the jury on how to calculate backpay damages. World argues that the district court erred by instructing the jury that it should not deduct the pension benefits Smith received from World when determining the backpay award. We disagree.

We have held that payments made from a pension plan that is separate from and independent of the employer's business need not be deducted from plaintiff's backpay award because those payments are from a source other than the employer (i.e., a collateral source). *Doyne v. Union Elec. Co.*, 953 F.2d 447, 451 (8th Cir.1992). We also have held, however, that an impermissible double recovery occurs where the district court awards the plaintiff backpay including employer pension contribution payments which would have been made on his account but for the unlawful discharge but fails to deduct the pension benefits the plaintiff already received. *Glover v. McDonnell Douglas*, 981 F.2d 388, 396–97 (8th Cir.1992), *vacated on other grounds*, —— U.S. ——, 114 S.Ct. 42, 126 L.Ed.2d 13 (1993), *readopted on remand*, 12 F.3d 845, 848 (8th Cir.1994). We did not hold in *Glover*, as World argues, that pension payments made to plaintiffs must be deducted from every award of backpay. Those payments should be deducted under *Glover* only when the backpay award includes the amount of contributions the employer would

have made to the plaintiff's pension but for the unlawful discharge. In essence, *Glover* comes into play only when the plaintiff is allowed to draw on his pension after being unlawfully discharged, *and* the award of backpay includes amounts designed to put his pension account in the same position as though he were never discharged.

We reject World's contention that all pension payments made after an unlawful discharge must be deducted from subsequent backpay awards. In *Doyne,* we favorably cited one court's observation that pension payments plaintiff receives after he was wrongfully discharged are not deductible because those payments " 'may be viewed as *earned* by the [plaintiff].' " 953 F.2d at 452 (quoting *E.E.O.C. v. O'Grady,* 857 F.2d 383, 391 (7th Cir.1988)). We conclude that the pension benefits Smith received should be treated as already earned and, therefore, not deductible from an award of backpay unless, as in *Glover,* the award of backpay includes sums for pension contribution payments Smith would have been credited for by World if Smith had not been unlawfully discharged.

Here, the record is silent on whether the jury's award of backpay intended to compensate Smith for pension contributions World would have made to Smith's pension but for the unlawful discharge. Because we have remanded for retrial of the backpay issue, we remand this related issue as well. The district court should instruct the jury in accordance with the above text.

### 5.

World's final argument[4] on the issue of backpay is that the district court erred by refusing to admit evidence of the amount of money World paid to a job placement agency to assist Smith in finding another job. We agree. The district court instructed the jury to reduce the backpay award by the amount of the severance package Smith received. This evidence is directly related to the value of the severance package Smith received.

### III.

World's final argument in this appeal is that the district court erred in awarding Smith front pay. Front pay is an equitable remedy, which the district court in its discretion may award under the ADEA to make the injured party whole. *See Nelson v. Boatmen's Bancshares, Inc.,* 26 F.3d 796, 802 (8th Cir.1994). Front pay may be awarded in lieu of, but not in addition, to reinstatement. *Williams v. Valentec Kisco, Inc.,* 964 F.2d 723, 730 (8th Cir.1992). We review the district court's decision to award front pay for abuse of discretion. *Nelson,* 26 F.3d at 802.

World argues that if Smith unreasonably refused its offer of reinstatement, he is not entitled to front pay. We agree. If an unreasonably rejected offer of reinstatement bars backpay after the rejection, it is logically consistent that it will bar entitlement to front pay as well. *O'Donnell v. Georgia Osteopathic Hosp., Inc.,* 748 F.2d 1543, 1550 (11th Cir.1984) ("Logic mandates, of course, that an unreasonably refused offer of reinstatement will preclude recovery of both frontpay and backpay"); *see also Hybert v. Hearst Corp.,* 900 F.2d 1050, 1055 (7th Cir.1990) (quoting *McNeil v. Economics Lab., Inc.,* 800 F.2d 111, 118 (7th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987)). We have reversed and remanded on the issue of whether Smith unreasonably rejected the offer of reinstatement. Accordingly, we must vacate and remand the district court's award of front pay to await the jury's determination of whether Smith's rejection of the offer of reinstatement was reasonable. The district court cannot order front pay if the jury finds Smith's rejection of the offer of reinstatement was not reasonable. *See Gibson v. Mohawk Rubber Co.,* 695 F.2d 1093, 1101 (8th Cir.1982) ("Although the court below retains its discretion to consider all the circumstances in this case when it determines what equitable relief may be appropriate, it cannot base its decision on its own factual findings that conflict with those expressly made by the jury").

---

4. World also argues that the district court should have remitted the backpay award because it was excessive. World argues, among other things, that the jury failed to follow the district court's instruction to reduce its award of backpay by the

amount of the severance payments Smith received. Because we have remanded the backpay issue for retrial, we need not determine if the jury's award was excessive or out of line with the evidence here.

## IV.

Smith cross-appeals the district court's order denying prejudgment interest on Smith's backpay and liquidated damages award, front pay award, and attorney's fees. Prejudgment interest is appropriate when the damage award does not otherwise make the plaintiff whole. *MacDissi v. Valmont Indus., Inc.*, 856 F.2d 1054, 1061 (8th Cir. 1988). The decision whether to award prejudgment interest is within the district court's discretion and we will reverse that decision only for abuse of discretion. *See E.E.O.C. v. Delight Wholesale Co.*, 973 F.2d 664, 669 (8th Cir.1992); *MacDissi*, 856 F.2d at 1061.

The district court denied prejudgment interest because the amount of backpay and front pay it awarded had made Smith whole. The district court committed no error in basing its denial of prejudgment interest on the adequacy of the backpay and front pay awarded. *See MacDissi*, 856 F.2d at 1061 (generous award of front pay is sufficient reason to deny prejudgment interest). However, because we have reversed the award of front pay and remanded for a new trial on the issue of backpay, the district court's rationale for denying prejudgment interest may be changed depending on the result on retrial. Accordingly, we must remand to the district court to determine anew whether to award prejudgment interest after the new trial on the issue of backpay.[5]

## V.

We affirm the district court's denial of the motion for judgment as a matter of law or a new trial on the issues of constructive discharge and equitable estoppel. We vacate the district court's award of backpay, liquidated damages, and front pay and the district court's denial of prejudgment interest. We remand to the district court for a new trial on the amount of backpay Smith may receive and for a determination of whether front pay and prejudgment interest are available based on that verdict.

---

5. The parties have spent a great deal of time arguing whether prejudgment interest is available when liquidated damages have been awarded. They note that we have previously held that prejudgment interest is not available when liquidated damages have been awarded. *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1102 (8th Cir.1982). We reasoned in *Gibson* that liquidated damages are compensatory damages intended to cover the plaintiff's intangible and difficult to prove losses, and that allowing prejudgment interest in addition to liquidated damages would provide the plaintiff a double recovery. *Id.* Smith argues, and the district court found, that our rationale in *Gibson* has been altered by the Supreme Court's subsequent observation in *Trans World Airlines v. Thurston*, 469 U.S. 111, 125, 105 S.Ct. 613, 623–24, 83 L.Ed.2d 523 (1985), that liquidated damages in ADEA cases "are punitive in nature." Smith agrees with the district court that liquidated damages are no longer a bar to prejudgment interest. World, however, strongly disagrees and contends that the *Gibson* analysis still governs the question. We conclude that this question is not properly before us. Smith filed the cross-appeal on this issue but agrees with the district court that *Thurston* effectively overruled *Gibson*. Hence, because the appealing party agrees with the district court on this particular question and World has not appealed the district court's holding, the issue is not before us.